**In re Charles Glenn WILSON and Carolyn Sue Wilson, Debtors.**

**Charles Glenn WILSON and Carolyn Sue Wilson, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. ED 80–061.
Adv. No. AP 81–537.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Jan. 8, 1982.

Jack Sims, Little Rock, Ark., for plaintiffs.

Lawrence Sherlock, Dept. of Justice, Washington, D.C., for defendant.

## ORDER AND MEMORANDUM OPINION

CHARLES W. BAKER, Bankruptcy Judge.

Before the Court now is the above-captioned Adversary Proceeding filed on September 2, 1981, by the debtors against the Internal Revenue Service of the United States Department of Treasury. The facts are not in dispute.

The debtors' Chapter 13 petition was filed on November 19, 1980. Prior thereto; specifically on June 2, 1980; the Internal Revenue Service had assessed the debtors $440.18 in tax and $38.77 in interest as a result of the underpayment of taxes for calendar year 1978. Despite demand upon them by the I.R.S., the debtors have at no time paid any of this indebtedness, which of course has continued to accrue interest. At the time of the filing of their bankruptcy petition this liability had grown to $510.20, in which amount the I.R.S. had properly filed a claim, to which no objection has been raised by the debtors. In 1981 the debtors filed a timely tax return for the calendar year 1980 alleging an overpayment of taxes in the amount of $496.64. The propriety of this refund is not disputed by the I.R.S., and the gravamen of this suit is whether or not the Treasury Department should be ordered to refund this overpayment to the plaintiffs.

In response, the I.R.S. asserts two defenses. Initially, it suggests that the statutory power of the Department to offset tax liabilities against refunds due; 26 U.S.C. § 6402(a); is controlling and that the debtors should not be entitled to any relief. This argument is not persuasive, for in the Court's view this section has been rendered inapplicable in bankruptcy by the Bankruptcy Code of 1978.

Alternatively, the defendant maintains that a pro-rata setoff of the indebtednesses should be permitted by the Court in light of 11 U.S.C. § 553(a) which provides in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case. under this title . . .

The debtors/plaintiffs strenuously oppose this suggestion on the ground that the debts are not "mutual" in that their entitlement to the refund did not arise or "vest" until subsequent to November 19, 1980 since there could not have been a determination of the amount of the refund due, or for that matter even a tax return filed, prior to January 1, 1981.

There can, initially, be no question as to the jurisdiction of the Court to determine this matter; 11 U.S.C. § 105, 28 U.S.C. § 1471, and 28 U.S.C. § 1481. Moreover, even under the previous Bankruptcy Act,

the power of Bankruptcy Courts to make such determinations was well settled. *See, e.g., In Re Monongahela Rye Liquors, Inc.,* 141 F.2d 864 (3rd Cir.1944).

 Additionally, the plaintiffs are correct in their assertion that "mutuality" is one of the touchstones of permissive set-off under § 553 of the Code; *In Re Shoppers Paradise, Inc.,* 8 B.R. 271, 7 B.C.D. 69 (Bkrtcy.S.D.N.Y.1980).

> Under the terms of Section 553 a creditor may offset mutual debts owing to the debtor against claims of the creditor due from the debtor. These mutual debts must be owing when the petition is filed commencing the bankruptcy petition. *In Re Princess Banking Corp.* [5 B.R. 587] 6 B.C.D. 842, 844 (Bkrtcy.S.D.Cal.1980).

> Thus the amount of setoff is limited to funds available at the time of filing the petition, not amounts available subsequently. *In Re Howell* [4 .B.R. 102] 7 B.C.D. 1, 4 (Bkrtcy.M.D.Tenn.1980).

> Accordingly, the right of setoff cannot be asserted against future, unmatured payments due the debtor. Setoff rights are limited to the amounts due at filing. *Id.* [4 B.R. 102, 7 B.C.D.] at 5.

The better view, however, is that the burden of proof as to an entitlement to the protection of § 553 will lie upon the creditor urging the allowance of the offset, which in this case is the defendant, Internal Revenue Service, *In Re Carpenter,* 14 B.R. 405, 8 B.C.D. 168 (Bkrtcy.M.D.Tenn.1981).

 Otherwise stated, what the plaintiffs assert in defense to the I.R.S. "counterclaim" is that the tax refund for 1980 is not "property of the estate" because it was so contingent or tenuous as to not be cognizable under 11 U.S.C. § 541. Accordingly, it is necessary to consider what constitutes "property of the estate" for purposes of the Bankruptcy Code. Under the Code's predecessor, the Bankruptcy Act of 1898 this question was controlled by § 70(a)—11 U.S.C. § 110(a)—which stated in pertinent portion:

> The trustee of the estate of a bankrupt ... shall ... be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this act ... to ... (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered ...

Accordingly, it was well settled under the Act that the concept of "property of the estate" was to be given a broad and liberal construction.

> ... it is axiomatic and the underlying philosophy of bankruptcy law that in exchange for a discharge of all liability of the bankrupt, the Trustee in bankruptcy takes all rights of the bankrupt arising therefrom. *Anderson v. St. Paul Mercury Indemnity Co.,* 340 F.2d 406, 409 (7th Cir.1965).

The *Anderson* case involved the question of the bankrupt's claim against his insurance carrier for negligence for its failure to timely settle a claim which resulted in a judgment against the bankrupt in excess of the policy limits. To the same effect is *In Re Brewster-Raymond Co.,* 344 F.2d 903 (6th Cir.1965) which concerned a claim of the bankrupt against the Navy for work performed prior to adjudication. Likewise, *In Re Cosner,* 3 B.R. 445 (Bkrtcy.D.Or.1980) which held that the fact that capital reserve accounts of a member of a farm cooperative were not immediately payable did not mean that they would not constitute "property" in which the member's trustee has an interest. Most pertinent to the instant controversy, however, is *Segal v. Rochelle,* 336 F.2d 298 (5th Cir.1964), aff'd 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

*Segal* involved a bankrupt partnership in which business losses were incurred in the same taxable year in which the bankruptcy petition was filed. After the close of the year, loss carryback tax refunds were sought and obtained from the United States. The assertion of the individuals (bankrupts also) that *they* were entitled to this benefit rather than the partnership trustee because it did not *accrue* until after

the filing of the petition was unsuccessful. The fact that this benefit could not be determined, let alone enjoyed, until a period after adjudication was—in the Court's estimation—irrelevant to the passage of this "property" to the trustee by operation of law under § 70(a) at the time of adjudication.

> ... we hold that an inchoate right to receive a loss-carryback refund is "property," and that it is property which the bankrupt could "by any means have transferred" within the meaning of § 70, sub. a (5) of the Bankruptcy Act. Consequently the refund proceeds belong to the trustee. *Id.* at 303.

*Also, see, In Re Bob Richards Chrysler-Plymouth, Inc.,* 473 F.2d 262 (9th Cir.1973) which reaches the same conclusion. Moreover, there are persuasive grounds for the belief that this holding was codified by the passage of the Bankruptcy Code of 1978.

> This section defines property of the estate, and specifies what property becomes property of the estate. The commencement of the bankruptcy case creates an estate. Under paragraph (1) of subsection (a), the estate is comprised of all legal or equitable interest of the debtor in property, wherever located as of the commencement of the case. The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action and all other forms of property specified in Section 70a of the Bankruptcy Act ... The result of *Segal v. Rochelle,* 382 U.S. 375 [86 S.Ct. 511, 15 L.Ed.2d 428] (1966) is followed, and the right to a refund is property of the estate. House Report 95–595, 95th Cong. 1st Session, p. 367.

Indeed, under the Bankruptcy Code the understanding to be given to term "property of the estate" is even more encompassing than was the case under the Bankruptcy Act:

> Such estate is comprised of: ...
>
> (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

And the bankruptcy courts have not been hesitant to vindicate the obvious Congressional intent embodied in this provision.

> There is no question that equitable interest (sic) in property is regarded as property of the estate within the meaning of 11 U.S.C. § 541. *In Re GSVC Restaurant Corp.,* 3 B.R. 491, 494 (Bkrtcy.S.D.N.Y. 1980).

> It is clear that by virtue of § 541(a) of the Bankruptcy Code, properties in which the Debtor had a cognizable or equitable ownership interest were no longer the properties of the Debtor on the date the petition in bankruptcy was filed, but became automatically part of the estate. *In Re Raymond Construction Co.,* 6 B.R. 793, 796, 797 (Bkrtcy.M.D.Fla.1980).

*In Accord: In Re Devall,* 9 B.R. 41 (Bkrtcy. M.D.Ala.1980). While the debtors are correct in maintaining that at the time of the filing of the petition herein there was no feasible method of determining the extent (or even the certainty) of the income tax refund to which they were entitled, and that in any event no return could even have been filed (let alone a refund paid) prior to January 1, 1981, the insinuation that because of these facts this indebtedness was somehow not "property of the estate" seems to fly in the face not only of the spirit, but indeed, of the very wording of § 541.

There is little authority on the subject of offset of taxes under the Bankruptcy Code, and accordingly, it is again useful to consider the teachings of the Courts under the Bankruptcy Act for illumination of this subject.

There can be little question, initially, that the practice of setting off refunds against unpaid federal taxes was sanctioned by the Courts under the Act, *Rochelle v. U.S.,* 521 F.2d 844 (5th Cir.1975). *Also, see In Re Clayton Magazines, Inc.,* 77 F.2d 852 (2nd Cir.1935); *In Re Brewster-Raymond Co., supra.* Nothing in the Code or in the legislative history thereof evinces a congressional intent to reverse this practice.

Given the fact that the, albeit inchoate, right to a tax refund was "property of the

estate" at the time of the filing of the debtors' petition herein, it would be anomalous to now hold that it concurrently lacked sufficient specificity and mutuality to permit an offset by the United States under 11 U.S.C. § 553.

And while it is true that the amount of $439.49 represents a pro-rata portion of the tax refund for the entire year; and that there is no proof that the debtors' income for the year was received in equal increments (which even if true would not necessarily reflect the precise amount then due because of the progressive nature of the tax rates); there appears to be no administratively practical alternative to the acceptance of this figure as the proper amount then outstanding as a "mutual" indebtedness.

Accordingly, the Court finds that the defendant, Department of Treasury, should, pursuant to § 553, be allowed to offset against the tax refund due the debtor the pro-rata share of the refund, $439.49, and that the remaining amount, $56.51, should be remitted forthwith to plaintiffs.

SO ORDERED.