**In re Jack WARDEN and Vickie Warden, Debtors.**

**Bankruptcy No. 82C–03089.**

United States Bankruptcy Court, D. Utah.

Jan. 25, 1984.

---

Richard F. Bojanowski and Peter J. Kuhn, Salt Lake City, Utah, for debtors.

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, for standing trustee.

Robert S. Horwitz, Dept. of Justice, Washington, D.C., and Barbara Richman, Asst. U.S. Atty., Salt Lake City, Utah, for I.R.S.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### INTRODUCTION

This Chapter 13 case requires the court to decide whether the Internal Revenue Service (IRS) violated the automatic stay by its post-confirmation retention of debtors' tax refund for a tax year which began pre-petition and ended post-petition, and, if so, whether sovereign immunity shields the IRS from civil contempt liability and, if not, whether compensatory and coercive remedies are appropriate.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a petition for relief under Chapter 13 on November 30, 1982. The Internal Revenue Service received notice of debtors' filing shortly after December 13, 1982, when the clerk of the court mailed to the IRS notice of the filing. That notice included an order which, *inter alia,* cautioned creditors that "as a result of the filing of the petition, certain acts and proceedings against the debtor and his property are stayed as provided in 11 U.S.C. § 362(a)." Debtors' schedules list IRS as a priority creditor in the amount of $164.80 for pre-petition taxes.

IRS placed a freeze code or bankruptcy control on debtors' account. IRS procedure in this regard is explained in *In re Alan E. and Vickie Burrow,* 36 B.R. 960 (Bk.D.Utah, 1984).

On April 15, 1983, debtors filed their federal income tax return for the 1982 tax year. The return showed an overpayment of taxes. On May 3, 1983, the court confirmed a plan, of which the IRS had notice and to which the IRS made no objection. The plan will pay IRS $164.80. The order confirming the plan provided that debtors would pay $200.00 from their 1982 income tax return to the trustee for the benefit of

creditors. Debtors' account with IRS reflected a refund for 1982 overpayments of taxes of $1,960.00.

After waiting several months for their federal income tax return, debtors contacted their attorney. On August 3, 1983, debtors filed an application for an order to show cause against the IRS requesting that the IRS be required to appear and show cause why it should not be held in contempt for knowingly violating 11 U.S.C. § 362(a) and for costs and attorney fees and other equitable relief.

On August 31, 1983, the United States Attorney for the District of Utah, counsel for the IRS, filed an objection to the application stating that IRS had "authorized a refund to debtors of $1,868.48 and has frozen the sum of $91.52 pending this action" and arguing that the IRS had not violated any statute or court order. Debtors subsequently received a refund check for all but $91.52, which the IRS retained.

On September 9, 1983, the IRS asked the court to modify the automatic stay to permit the IRS to offset its claims against debtors against debtors' tax refund.

On September 20, 1983, the court issued an order to show cause against the IRS with an accompanying memorandum opinion. The court found that debtors' application, in addition to asking for remedies for the alleged contempt, implicitly asked for turnover of debtors' tax refund. The court set a hearing on October 5, 1983 on the issues of contempt, attorneys fees, costs, and turnover, including the issue of the right to setoff and to withhold the refund and invited the parties to file legal memoranda and a stipulation of facts.

On October 5, 1983, the IRS withdrew its motion for relief from the automatic stay shortly before the hearing on the order to show cause. At the hearing, the court received testimonial and documentary evidence and took the matter under advisement. At the request of the parties, the court permitted the filing of post-hearing memoranda. The court now issues this memorandum opinion.

## WHETHER THE IRS VIOLATED THE AUTOMATIC STAY

This case is a companion case to *In re Alan E. and Vickie Burrow, supra.* The IRS followed in this case the same pre-August 25, 1983 procedure described in *Burrow.* That procedure was to freeze the tax refunds of debtors in bankruptcy until receiving an inquiry about the refund. Upon receiving an inquiry, the account would be researched for tax liability. If the refund owing exceeded the amount of the tax liability, a belated refund of the excess would be issued. The remainder would be retained.

11 U.S.C. Section 362(a)(6) provides that: Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

The IRS argues that its action in retaining a portion of the debtors' tax refund was not an act taken in violation of the automatic stay because the IRS, in its view, was merely exercising its rights under 11 U.S.C. Section 542(b) which provides:

Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Assuming, without deciding, that the tax refund in this case was a debt covered by Section 542(b), the right of the IRS to avoid the command of Section 542(b) to pay the refund to the trustee depends on whether the refund could be offset under Section 553 against a claim against debtors.

Section 553(a) provides that: Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt

owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case.

Debtors' pre-petition tax liability to the IRS qualifies under Section 553(a) as "a claim ... against the debtor that arose before the commencement of this case." The IRS argues that debtors' tax refund for the 1982 tax year qualifies as "a mutual debt owing ... to the debtor that arose before the commencement of the case." This conclusion has been questioned. *In re Hammett*, 21 B.R. 923 (Bkrtcy.E.D.Pa.1982), for example, held in a case where the refund in question was for the tax year in which the debtor's petition was filed. In other words, part of the tax overpayment was made pre-petition and part was made post-petition. The court held that:

> [T]he debtor's right to a refund did not arise until eight (8) months after the filing of the petition. The debtor's claim against the I.R.S. did not exist before the commencement of the case. Therefore, there is no right of setoff to be preserved by § 553.

21 B.R. at 925. This holding was cited with approval by the District Court for the Middle District of Tennessee in *In re Internal Revenue Service Liabilities and Refunds in Chapter 13 Proceedings*, 30 B.R. 811 (D.C.M. D.Tenn.1983):

> A clear example of [an] ... improper setoff ... is presented in the case of *United States v. Hammett*. In *Hammett*, the court found that the IRS had no right to setoff a tax refund to the debtor when the debtor's right to a refund did not arise until eight months after the filing of his bankruptcy petition.

30 B.R. at 813. It has been argued that where a tax refund relates to a year which began pre-petition and ended post-petition, there is no mutuality between pre-petition tax debts and the tax refund because the refund does not arise or vest until after the petition is filed. When bankruptcy petitions are filed in mid-year, the debtors may

not even file a tax return until the year's end. The court in which these arguments were made, however, rejected them. *In re Wilson*, 29 B.R. 54 (Bkrtcy.W.D.Ark.1982). The court found that:

> While the debtors are correct in maintaining that at the time of the filing of the petition herein there was no feasible method of determining the extent (or even the certainty) of the income tax refund to which they were entitled, and that in any event no return could even have been filed (let alone a refund paid) prior to January 1, 1981, the insinuation that because of these facts this indebtedness was somehow not "property of the estate" seems to fly in the face not only of the spirit, but indeed, of the very wording of Section 541.

> . . . . .

> Given the fact that the, albeit inchoate, right to a tax refund was "property of the estate" at the time of the filing of the debtors' petition herein, it would be anomalous to now hold that it concurrently lacked sufficient specificity and mutuality to permit an offset by the United States under 11 U.S.C. Section 553.

The court went on to hold that the IRS could offset a pro-rata portion of the tax refund.

The *Hammett* holding cited above was questioned by the district court on appeal. *See In re Hammett*, 28 B.R. 1012 (D.C.Ed. Pa.1983). The district court noted the argument that the right to a refund did not arise until after the filing of the petition but said that under the doctrine of *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the refund might well be subject to offset. The court cited *Wilson, supra*, with approval.

■ The issues discussed in *Hammett*, *Wilson*, and *In re Internal Revenue* relating to the existence of a right of setoff on facts such as these, however, need not be resolved in this case. Even if the IRS had, under Section 553(a), a right to offset debtor's inchoate tax refund rights against its claim for pre-petition taxes and therefore a corre-

sponding right under Section 542(b) to refrain from paying the refund to debtors, those rights were extinguished upon confirmation of the debtors' plan. In this case, the plan was confirmed on May 4, 1983, less than twenty days after debtors filed their 1982 tax return. The alleged violation of the stay in this case, the retention of the tax refund, did not occur until after May 4.

After May 4, when debtors' plan was confirmed, the IRS' rights in debtors' tax refund were lost. The confirmation of a Chapter 13 plan, under 11 U.S.C. Section 1327, has the following effects:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Debtors' plan provided for full payment of the IRS' claim. No provision of the plan prohibited the vesting of the tax refund in the debtors free and clear of any interest of the IRS. Moreover, this plan specifically designated $200.00 of the tax refund as property to be paid under the plan.

The automatic stay continued in this case after the order of confirmation. *See* Section 362(c)(2)(C). The post-confirmation continuance of the automatic stay in Chapter 13 cases protects debtors in the performance of their plans.

Several courts have held that the confirmation of a Chapter 13 plan, at least where neither the plan nor the order of confirmation provides otherwise, extinguishes rights of setoff otherwise held by the IRS. *See In re Alexander,* 31 B.R. 389, 391 (Bkrtcy.S.D. Ohio 1983) ("With respect to the IRS' right of setoff, however, the court finds that such

right, although existent under 11 U.S.C. § 553(1) when the Chapter 13 was filed, is now barred by the confirmation of debtors' plan."); *In re Hackney,* 20 B.R. 158, 159 (Bkrtcy.D.Idaho 1982) ("The right to have a stay vacated and to exercise a setoff must be exercised by a creditor who is provided for in the debtor's plan prior to confirmation. Once the plan is confirmed, if it makes provision for payment of a creditor's obligation in a specific manner, that creditor is bound by the terms of the plan."); *In re Holcomb,* 18 B.R. 839, 841 (Bkrtcy.S.D. Ohio 1982) ("Thus, IRS possessing a right of setoff prior to the filing of the Chapter 13 petition ... but apparently not having exercised that right prior to such filings ... is now [after confirmation] barred under the provisions of § 362 ... form exercising a right of setoff.... Further, § 1327(b) and (c) ... combine to clearly vest all the property of the estate in the debtor as of the time of confirmation of the Chapter 13 plan, and such property vests free and clear of any claim or interest of any creditor provided for by the plan.").

Sound policy reasons support of this conclusion. "Here, the ... Court gave the IRS notice and an opportunity to have its objections to the proposed plan heard, an opportunity the IRS failed to take. Upon confirmation, the IRS became bound to that plan and to the payment schedule that would satisfy its claim in full. The [debtors] ... have been faithful to their obligations under the plan. To allow the IRS to retain their overpayment as extra security on the debt would seriously compromise the powers of the Bankruptcy Court, the capacity of debtors to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster." *United States v. Norton,* 717 F.2d 767, 774 (3d Cir.1983). The standing trustee, in her brief in *Burrow, supra,* noted that:

The IRS has, in fact, [in the District of Utah] received over $85,000 in Chapter 13 payments in the current calendar year.... Significant administrative difficulty arises when established claims change through payment outside the

plan. Often the creditor receiving payment does not report to the Court and the Trustee the payment. Therefore, overpayments to the creditor must be returned and checks voided. The payment must then be redisbursed to other creditors. Since the Trustee's compensation and expense is only paid on funds received, any reissuance and voidance of checks is done with no compensation to the Trustee. To the best of the Trustee's recollection, however, no funds have ever been returned from the IRS to the Trustee's office because of overpayment. In addition, the administrative burden of debtors inquiring as to the whereabouts of their Federal Tax refunds is substantial. Each phone call requires a detailed explanation of IRS' policy regarding holds on tax refunds.

.    .    .    .    .

Payment to IRS outside the plan [through post-confirmation offsets of tax refunds] causes confusion to the debtors and their other creditors. . . . If IRS offsets a claim and refund, the debtor does not get "credit" for having made the payment. While the effect is generally to return more of the debtors' monthly payments to other creditors, it is really not the commitment to repay creditors the debtor originally entered into. Additionally, the tax refund may have been committed to other obligations. In the Warden case at bar, a portion of the refund was committed to the plan to pay other creditors. In other instances the refund may have been included in the debtor's budget for necessities, emergencies, balloon payments, etc., which serve to make the plan more feasible. The position taken by the IRS would hinder the efficient administration of chapter 13 cases.

By retaining debtors' 1982 tax refund after the entry of the order confirming debtors' Chapter 13 plan, the IRS violated 11 U.S.C. Section 362(a)(6). In this respect, this case is identical to *Burrow, supra,* and the conclusions set forth there with respect to post-confirmation retention of tax refunds as a violation of the stay need not be repeated here. At least as of the date of the entry of an order confirming debtors' plan, the IRS was obligated to release debtors' 1982 tax refund. Instead, in an attempt to collect or recover its tax claim,[1] the IRS retained all of the refund between May 4 and August of 1983 and $91.52 of the refund after August of 1983. In this manner, the IRS violated the stay.

## WHETHER THE IRS MAY BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE AUTOMATIC STAY

The IRS, notwithstanding any assertion of sovereign immunity, may be held in civil contempt for violations of the automatic stay. The discussion of this issue in *Burrow, supra,* is adopted here in full.

## WHETHER COMPENSATORY AND COERCIVE REMEDIES ARE APPROPRIATE IN THIS CASE

The discussion of this issue in *Burrow* is adopted here with the modifications noted below. This case differs from *Burrow* in that arguably the IRS had a right of setoff and thus a right to retain the debtors' refund between the date of the filing of debtors' petition and the date of the entry of the order confirming debtors' plan. The IRS' pre-confirmation rights, as noted above, are not determined in this opinion. It is the post-confirmation actions of the IRS that have relevance. Thus, while some of the opinions cited here and in *Burrow* support the IRS' argument that it had pre-confirmation rights of setoff, those opinions

1. That IRS was attempting to collect or recover its claim is, of course, an inference from all of the facts and circumstances of this case. Naturally, the IRS officer who testified did not say that the refund was retained in a collection or recovery attempt. Just as naturally, debtors had no direct evidence that the IRS' subjective intent was to collect or recover its claim. But given the facts no other explanation is reasonable. As explained in *Burrow, supra,* intent to violate the law is not an issue in this proceeding. Instead, the issue is whether acts were performed which in fact violated the stay.

are irrelevant to the issue of the IRS' post-confirmation rights.

The IRS argues that neither the automatic stay nor the court's order mailed to the IRS on December 13, 1982 was a clear and definite order, a prerequisite to a finding of contempt. As was the case in *Burrow,* a close examination of the tax setoff opinions published to date reveals that none supports the position of the IRS in this case.

In *U.S. v. Norton, supra,* the court said: A party should not be held in contempt unless a court first gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with contempt. [citations omitted] Whether the retention of tax overpayments constitutes a setoff in violation of the automatic stay is a much litigated and controversial question. Inasmuch as the answer to that question was unclear at the time the tax refund was withheld by the Government, we believe that the IRS did not have fair warning that its retention of the funds was per se a violation of the automatic stay.

717 F.2d 774–775. In support of its conclusion about the ambiguity in the law, the court cited *In re Internal Revenue, supra; In re Powers,* 28 B.R. 86 (Bkrtcy.E.D.Pa. 1983); *In re Perry,* 26 B.R. 599 (Bkrtcy.E.D. Pa.1983); *In re Harris,* 19 B.R. 624 (Bkrtcy. E.D.Pa.1982); *In re Mealey,* 16 B.R. 800 (Bkrtcy.E.D.Pa.1982); and *In re Wilson,* 29 B.R. 54 (Bkrtcy.W.D.Ark.1982).

*In re Internal Revenue, supra,* was not a ruling on any specific case. Instead, as explained above, it was an opinion explaining the revocation of an order permitting the IRS generally to offset tax claims against tax refunds. The court, specifically questioned the rights of the IRS to retain tax refunds in the face of a confirmed Chapter 13 plan:

[T]his court would still be disinclined to grant the IRS relief from the stay to make a postpetition setoff in a Chapter 13 case if the debtor's plan provided for full payment of the IRS' claim in conformity with the provisions of Chapter

13. . . . This would especially be the case if the IRS' complaint [to lift the stay] was initiated *after* the confirmation of the debtor's plan. *See* 11 U.S.C.A. § 1327(a).

30 B.R. at 813–814. Thus, *In re Internal Revenue* does not support the position taken by the IRS here.

*In re Powers, supra,* does not indicate whether it is dealing with pre- or post-confirmation retention of a tax refund. Section 1327 is not even cited in the opinion. Moreover, *Powers* is not an opinion on contempt for violating the stay. *Powers* provides no support for the IRS' position here.

*In re Perry, supra,* does not indicate whether it is dealing with pre- or post-confirmation retention of a tax refund. Although the court refers to current payments to the standing trustee, this may mean either pre- or post-confirmation payments since in many districts pre-confirmation payments are required of Chapter 13 debtors. Section 1327 is not cited. *Perry,* like *Powers,* is not a contempt opinion. Instead, it is an opinion on relief from the stay.

*In re Harris, supra,* is not a contempt opinion. It does not address Section 1327. It does not specify whether it is dealing with pre- or post-confirmation retention of a tax refund.

*In re Mealey, supra,* is a contempt opinion. The court held the IRS in contempt. But the opinion does not say whether the contemptuous act, retaining a tax refund, occurred pre- or post-confirmation, or in fact whether a plan had been confirmed. Section 1327 is not cited.

*In re Wilson, supra,* has the same defects, for purposes of determining it creates an ambiguity in the law with respect to post-confirmation retention of tax refunds, as the cases discussed above. It does not indicate whether a plan had been confirmed. It does not cite Section 1327. It is not a contempt opinion.

Thus, the cases cited in *Norton* do not purport to have anything to do with the issues in this case. They do not create an

ambiguity in the law which should shield the IRS from civil contempt.

*In re Hammett, supra,* also referred to an ambiguity in the law surrounding the retention by the IRS of tax refunds of debtors in bankruptcy. The court said:

It is apparent from the foregoing authorities that there is a conflict in the bankruptcy courts as to whether the IRS has the right to retain a tax refund pending the outcome of a petition for relief from the automatic stay. In light of this conflict, we conclude that the government's argument was not without substance and was not based on a wholly specious reading of the statute.

28 B.R. at 1018. The "foregoing authorities" referred to were *Hackney, supra;* the bankruptcy court's opinion in *Norton; Mealey, supra; In re Murry,* 15 B.R. 325 (Bkrtcy.E.D.Ark.1981); *In re Lawrence,* 19 B.R. 627 (Bkrtcy.E.D.Ark.1981); *Segal v. Rochelle,* 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); *In re Doan,* 672 F.2d 831 (11th Cir.1982); *In re Griffin,* 1 B.R. 653 (Bkrtcy.M.D.Tenn.1979); *In re Bathrick,* 1 B.R. 428 (Bkrtcy.S.D.Tex.1979); and *In re Wilson, supra.*

*Hackney* and *Norton* clearly contradict the IRS' position in this case. *Mealy, Segal, Doan, Griffin, Bathrick,* and *Wilson,* have nothing to do with the IRS' position in this case. Only *Murry* and *Lawrence* remain.

*In re Murry, supra,* did not involve a confirmed plan. The court, at 15 B.R. 326, referred to "[t]he plan proposed by the debtor." [2] Section 1327 is not cited.

*In re Lawrence, supra,* is the only case which comes close to supporting the IRS' position in this case. The dispute in *Lawrence* was whether the IRS could retain the debtor's tax refunds post-confirmation in a Chapter 13 case. The opinion does not indicate how the plan proposed to treat debtor's pre-petition tax liability. Post-confirmation, the debtor sued the IRS for turnover of tax refunds the IRS was holding. The

tax refunds were for two tax years one of which began and ended pre-petition and one of which began pre-petition and ended post-petition. With respect to the tax refund which was wholly pre-petition, the court ruled that with respect to the pre-petition tax year, the IRS could offset debtor's refund against debtor's pre-petition tax liability. But with respect to the tax year which began pre-petition and ended post-petition, the court ruled that the IRS had no right of setoff and ruled that under either Section 543 or 542, the IRS was obligated to return all of the refund. The debtor did not raise, and the court did not discuss, contempt.

It is plain that *Lawrence* does not support the IRS' position in this case. Its holding with respect to a tax refund from a year beginning pre-petition and ending post-petition is that the IRS must deliver it to the trustee, not retain it until hailed into court.

■ Having examined the case law, the court concludes that ambiguities in the case law on the right to withhold, post-confirmation in a Chapter 13 case, tax refunds from a tax year which begins pre-petition and ends post-petition simply do not exist. For these reasons the IRS' argument that there was no clear and definite order in this case must be rejected.

## WHICH COERCIVE AND COMPENSATORY REMEDIES ARE APPROPRIATE IN THIS CASE

■ The IRS should be required to release the remainder of debtors' tax refund together with interest as provided by law. Moreover, the IRS should be ordered to compensate debtors for costs and attorneys fees incurred by the debtors in their attempt to convince the IRS to return what should not have been withheld from debtors. These costs and fees are losses or damages sustained by the debtors by reason of the IRS' noncompliance with the automatic stay and the orders of this court.

---

2. Contra, *In re Hammett,* supra, 28 B.R. at 1017. ("In the Arkansas cases [Murry and Lawrence] the courts found, without discussing the impact of section 1327(a), that the government could retain a tax refund after a Chapter 13 plan was in effect.") The court did not explain how it determined that a Chapter 13 plan was in effect in *Murry.*

On the issue of the measure of costs and fees in this case, some background is necessary. Debtors' order to show cause against the IRS in this case was issued simultaneously with an order to show cause against the IRS and an agency of the State of Utah in three other cases. The hearing held in the matter and the briefs filed with the court addressed all four of the cases. Debtors in all four of the cases employed the same attorney. The attorney filed an affidavit which covered all four cases and itemized the work performed and costs incurred but which did not divide the time or costs between the four cases. The total time spent was 28 hours, for which the attorney requests a fee of $1,995.00. Costs total $37.12. Debtors prevailed in three of the cases but lost in the fourth case.[3]

Based upon a review of the files in all four matters and a comparison of the files with the affidavit of the attorney, it appears that the attorney's time was equally divided between the four cases. Because of the small amount of costs involved, an equal apportionment of costs seems appropriate. Therefore, in each case in which the debtors prevailed, the IRS or the State of Utah, as the case may be, should be required to pay one-fourth of the $1,995.00 in fees and one-fourth of the $37.12 in costs. This case is one in which debtors prevailed. Thus, the IRS should be required to pay to debtors the sum of $478.75 in fees and the sum of $9.28 in costs.

An order is entered with this opinion.

---

**3.** Opinions in two of the four cases are issued simultaneously with this opinion. *See In re Alan E. and Vickie Burrow,* 36 B.R. 960 and *In re Richard Mark Ashby,* 36 B.R. 976. An opinion in the fourth case was issued on December 12, 1983. *See In re David Paul and Penolepe A. Johnson,* 36 B.R. 958.