**In re Alan E. BURROW and Vickie Burrow, Debtors.**

**Bankruptcy No. 81A–02636.**

United States Bankruptcy Court, D. Utah.

Jan. 25, 1984.

MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

## INTRODUCTION

This Chapter 13 case requires the court to decide whether the Internal Revenue Service (IRS) violated the automatic stay by its post-confirmation retention of debtors' tax refund for a tax year which began and ended post-petition, and, if so, whether sovereign immunity shields the IRS from civil contempt liability, and, if not, whether compensatory and coercive remedies are appropriate.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a petition for relief under Chapter 13 on August 17, 1981. Debtors' statement of affairs listed a $2,583.00 debt to the IRS. When the IRS received notice of debtors' filing, it placed what it calls a "freeze code" or "bankruptcy control" on debtors' account in the IRS computer system. A freeze code prevents the filing of tax liens, the assessment of taxes, the set-off of tax overpayments against tax liabilities, and the issuance of tax refunds. After placing its freeze code on debtors' account, the IRS researched debtors' tax liabilities and determined that on the petition date debtors owed $1,795.59 in taxes and $645.49 in penalties for the 1979 and 1980 tax years.

On January 22, 1982, the court held a hearing on the confirmation of debtors' plan, which provided for priority payment of the full amount of the IRS claim. Although the IRS had notice of the confirmation hearing, it did not appear at the hearing or file objections to the confirmation of the plan. On February 4, 1982, the court entered an order confirming the plan.

On February 10, 1982, the IRS filed a $1,795.59 proof of claim for 1979 and 1980 taxes. Subsequently, the IRS has received under the plan full payment of its claim. The payments were made on January 10, 1982 ($711.12), July 5, 1983 (735.72), and in October, 1983 ($348.75).

Richard F. Bojanowski and Peter J. Kuhn, Salt Lake City, Utah, for debtors.

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, for standing trustee.

Robert S. Horwitz, Dept. of Justice, Washington, D.C., and Barbara Richman, Asst. U.S. Atty., Salt Lake City, Utah, for I.R.S.

Debtors filed their tax return for 1982 on or shortly before April 15, 1983. Their return showed an overpayment of $550.00. Months passed but no refund came. Finally, debtors contacted their attorney, who, on August 3, 1983, filed an application for an order to show cause against the IRS through Clark Holfeltz, Carol Foy, and Roscoe L. Egger, Jr., IRS employees. At the time of the application, the standing trustee had paid the IRS all but $348.00 of its claim but the IRS was withholding a $550.00 refund. The next payment, approximately two months away, would pay the IRS claim in full. The application requested:

that the Internal Revenue Service be ordered to appear and show cause why it should not be held in contempt for knowingly violating 11 U.S.C. § 362(a) and for costs and attorney fees in bringing this Order to Show Cause and for such other and further relief as the Court may deem just and reasonable in the premises.

On August 31, 1983, the IRS filed its objection to the application admitting that it had frozen debtors' $550.00 tax refund and arguing that it had not violated any statute or court order.

On September 9, 1983, the IRS requested the court to modify the automatic stay to permit the IRS to offset its claim against debtors' tax refund.

On September 20, 1983, the court issued an order to show cause against the IRS, finding, in a memorandum opinion, that debtors' application, in addition to asking for remedies for the alleged contempt, implicitly asked for turnover of debtors' tax refund. The court set a hearing on October 5, 1983 on the issues of contempt, attorneys fees, costs, and turnover, including the issue of the right of setoff and the right to withhold the refund. The parties were permitted to file legal memoranda and a stipulation of facts.

On October 5, 1983, shortly before the hearing on the order to show cause, the IRS withdrew its motion for relief from the automatic stay. At the hearing, the court received testimonial and documentary evidence and took the matter under advisement. At the request of the parties, post-hearing memoranda were permitted. The court now issues this memorandum opinion.

## WHETHER THE IRS VIOLATED THE AUTOMATIC STAY

At the October 5, 1983 hearing, Mr. Clark Holfeltz, a Special Procedures Advisor in the Salt Lake City IRS Office, explained that debtors' refund had not yet been paid because of the freeze code placed on the IRS' computer. Although a $550.00 credit remains on debtors' IRS account and is accruing interest, the computer will not issue a refund check because of the freeze code.

Mr. Holfeltz explained that until August 25, 1983,[1] the procedure followed by his office was to place a freeze code on the IRS computer upon receipt of a notice of a bankruptcy petition. Notice to IRS employees would thereby be given to stop all collection efforts. Next, an IRS employee would search the account for tax liability. If the research disclosed no liability, the freeze would be removed. If research disclosed a tax liability, the freeze would remain in place indefinitely.

When asked under what circumstances the freeze would be removed, Mr. Holfeltz said his office would simply wait until it received an inquiry about an unpaid tax refund, then examine the account. If the refund exceeded the amount of the tax liability, the employee would initiate what the IRS calls a "manual refund" procedure. Apparently, however, in cases where the refund was equal to or less than the amount of the tax liability, a manual refund would not be requested, even in Chapter 13 cases with a confirmed plan. The manual refund procedure involves a request for a refund outside the normal automatic computerized procedure for issuing refund checks. Mr. Holfeltz explained that while ideally the time between a request for a manual refund and the time a check is issued is 10 to 15 days, it sometimes takes much longer. At times Mr. Holfeltz has had to submit

1. *See* note 2, *infra.*

three requests because the first two have disappeared.

After requesting a manual refund, the IRS office would ask its District Counsel to ask the United States Attorney to file a request for relief from the automatic stay to permit an offset of the overpayment and tax obligations. Sometimes, the United States Attorney might not file a request.

In this case, the tax refund remained frozen. No manual refund was initiated until the Justice Department, after becoming aware of the debtors' motion for an order to show cause, ordered Mr. Holfeltz to release the refund. Because the request for a manual refund was made at the end of the IRS' fiscal year, it was delayed because of other business.[2]

> 11 U.S.C. Section 362(a)(6) provides that: Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

In this case, the prohibition of Section 362(a)(6) was embodied in an order contained in the notice mailed to the IRS on August 31, 1981. That order cautioned creditors that "as a result of the filing of the petition, certain acts and proceedings against the debtor and his property are stayed as provided in 11 U.S.C. § 362(a)."

The IRS placed its freeze code on the debtors' account sometime shortly after August 31, 1981. The freeze code, although it had some beneficial effects such as preventing the collection of taxes through automatic offset of tax refunds and overpayments, prevented debtors' refund from being released. The freeze code, along with the

IRS' policy of holding debtors' tax refunds until they complained, the time consuming chain of the IRS' administrative procedures, and the press of other IRS business, has delayed the payment of debtors' tax refund far beyond the time when it normally would have been paid. As a result, debtors have been deprived of funds which could have been devoted to their Chapter 13 plan for the repayment of creditors. I find that the IRS' purpose in withholding debtors' tax refund was to collect or recover its pre-petition claim for unpaid taxes. The automatic stay was in force at the time the IRS withheld the refund, the debtors' plan to pay the IRS in full had already been confirmed, and the IRS had no setoff rights in the tax refund.

Setoff rights might have given the IRS a colorable right to freeze debtors' tax refund. *See, e.g., In re Carpenter,* 14 B.R. 405 (Bkrtcy.M.D.Tenn.1981); Groschadl, " 'Freezing' the Debtor's Bank Account: A Violation of the Automatic Stay?" 57 AM. BANK.L.J. 75 (1983); 11 U.S.C. § 542(b). That issue, however, need not be decided in this case because here the IRS had no setoff rights.

On the date of debtors' filing, August 17, 1981, the IRS had no right to credit overpayments of 1982 taxes against debtors' tax debts under 26 U.S.C. Section 6402(a) or other applicable law because on that date no overpayment existed. Even though a right to setoff 1982 tax overpayments would have arisen under Section 6402(a) absent bankruptcy, that right never came into existence because of the automatic stay and the order confirming the debtors' plan. 11 U.S.C. §§ 362(a) and 1327. *See In re Wilson,* 29 B.R. 54 (Bkrtcy. W.D.Ark.1982) ("[Section 6402(a)] has been

---

**2.** On August 25, 1983, Mr. Holfeltz testified, the Salt Lake City IRS Office had a meeting with an employee of the IRS' national office. This meeting took place after debtors sought an order to show cause against the IRS. At the August 25 meeting, it was decided that henceforth, upon receiving an inquiry about a frozen tax refund owing to a Chapter 13 debtor, the IRS office will verify whether a plan has been confirmed and, if so, whether the plan is "in good standing." The meaning of "in good standing" was not detailed, except that it includes a requirement that the debtor be current in making plan payments. If a plan has been confirmed and is "in good standing," an IRS employee will then request a manual refund. Nothing in this opinion should be construed to be a finding that the IRS' new procedure has been approved by this court.

rendered inapplicable in bankruptcy by the Bankruptcy Code of 1978."); *In re Alexander,* 31 B.R. 389, 391 (Bkrtcy.S.D.Ohio 1983) (Even if the IRS has a right of setoff at the time the petition is filed, that right is barred by the confirmation of a plan). *See also, United States v. Norton,* 717 F.2d 767 (3d Cir.1983).

■ Although 11 U.S.C. § 553(a) provides that Title 11 "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case," Section 553(a) does not apply to this case. While the IRS had a claim against the debtors that arose before the commencement of the case, the 1982 tax refund was not a debt owed to the debtors at the commencement of the case.[3]

■ Because the IRS had no setoff rights, its placement and retention of a signal on its computer which prevented the issuance of debtors' refund check was an act to collect or recover the IRS' pre-petition tax claim prohibited by 11 U.S.C. § 362(a)(6).[4] The IRS points to the benefits of its freeze code in halting the collection of taxes. The court agrees that the freeze code has some beneficial aspects. But on the facts of this case, the freeze code went too far, namely, by attempting to hold the refund for collection in the absence of a right of setoff. Thus, holding the refund for collection was also an act to collect or recover a debt within the meaning of Section 362(a)(6). The IRS argues that, absent the freeze code, the IRS computer automatically would have applied the 1982 tax refund to the pre-petition tax debt and that therefore the freeze code, instead of

causing a violation of the stay, actually prevented a violation of the stay. This argument is not persuasive. If a computer can be told to hold and offset a tax refund, it can be told to release a tax refund. In this case the plan had been confirmed even before the debtors' 1982 tax return was filed. Surely, once a plan had been confirmed, the IRS could have canceled the computer's hold on debtors' tax refund and could have ordered the computer not to make a setoff.

## WHETHER THE IRS MAY BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE AUTOMATIC STAY

The IRS argues that the court may not hold it in civil contempt because of the doctrine of sovereign immunity. *United States v. Norton, supra,* reserved judgment on sovereign immunity in a case involving a criminal contempt sanction against the IRS. *In re Newlin,* 29 B.R. 781, 10 B.C.D. 1415 (D.C.E.D.Pa.1983), held that the doctrine of sovereign immunity insulates the IRS from criminal contempt sanctions. Because this case involves only civil contempt, neither case supports the argument of the IRS that the doctrine of sovereign immunity bars this court from holding the IRS in contempt for violations of the automatic stay. *In re Hammett,* 28 B.R. 1012 (D.C.E.D.Pa.1983) raised but did not decide the issue with respect to civil contempt.

■ Section 106(c) of Title 11, U.S.C., is an express waiver of sovereign immunity with respect to the determination by this court of any issues arising under any provision of Title 11 that contains the term "creditor," "entity," or "governmental unit."[5] This case raises issues under 11

---

**3.** For the same reasons, Section 362(a)(7) has no relevance to this case. That section applies only to the setoff of a debt owing to the debtor that arose before the commencement of the case. Thus, it is not necessary to address the IRS' argument that its freeze was not a setoff in violation of Section 362(a)(7).

**4.** This act was similar to placing a continuing garnishment on debtors' future income. The failure of a creditor to remove a continuing

garnishment after the automatic stay has become effective has been held to violate the automatic stay. *In re Elder,* 12 B.R. 491 (Bkrtcy.M.D.Ga.1981).

**5.** Section 106(c) provides, in pertinent part, that: "[n]otwithstanding any assertion of sovereign immunity—(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and (2) a determination by the court of an issue

U.S.C. § 362(a), which contains prohibitions of certain acts by "all entities." The term "entity" includes governmental units. 11 U.S.C. § 101(14). The term "governmental unit" includes a department, agency, or instrumentality of the United States. 11 U.S.C. § 101(21). Thus, the determination by this court of any issues involving the violation of Section 362(a) or of the order of this court made under that section binds the IRS notwithstanding any assertion of sovereign immunity.

█ The legislative history of 11 U.S.C. § 362(a) supports this conclusion. House Report No. 95–595, 95th Cong., 1st Sess. 342 (1977) and Senate Report No. 95–989, 95th Cong., 2d Sess. 51 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5837, 6299, explained that:

> With respect to stays issued under other powers [such as those granted by Section 105], or the application of the automatic stay, to governmental actions, this section [Section 362(a)] and the other sections mentioned are intended to be an express waiver of sovereign immunity of the Federal Government.

The IRS, like other creditors, is subject to this court's exercise of its civil contempt powers to enforce the automatic stay. Cf. *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 2315, 76 L.Ed.2d 515 (1983) ("The [Internal Revenue] Service is bound by § 542(a) to the same extent as any other secured creditor.").

## WHETHER COMPENSATORY REMEDIES FOR CIVIL CONTEMPT ARE APPROPRIATE IN THIS CASE

Violations of the automatic stay, and thus of the order entered in this case, may be addressed under 11 U.S.C. § 105(a) which authorizes the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title," and 28 U.S.C. § 1481 which confers the "powers of a court of equity, law and admiralty" on this court. A comprehensive explanation of the contempt powers of this court is found in *In re Reed,* 11 B.R. 258 (Bkrtcy.D.Utah 1981).[6]

This is a proceeding involving civil not criminal contempt because its purpose is to enforce compliance with the automatic stay and an order of this court and to compensate for losses or damages sustained by reason of noncompliance. *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). The purpose of this proceeding is not to punish the IRS by a fine or imprisonment of any of its employes. *See Reed, supra* at 266. The sanctions sought here against the IRS are "not punitive but remedial." *Id.* at 267. The proceeding was held under the assumption that only civil contempt was at stake. No notice of criminal contempt as required by law was given. The fact that debtors sought a contempt citation believing they were denied the statutory relief to which they were entitled under 11 U.S.C. § 362(a) indicates the civil nature of the contempt.

█ The disobedience, in civil contempt, need not be willful. *Reed, supra* at 268. The United States Supreme Court has held that "the absence of willfulness does not relieve from civil contempt.... Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *McComb, supra,* 336 U.S. at 191, 69 S.Ct. at 499 (referring to violations of a decree enjoining violations of the Fair Labor Standards Act). The principle of law announced

arising such a provision binds governmental units."

**6.** Some courts have questioned the jurisdiction of bankruptcy courts to exercise contempt powers after *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102

S.Ct. 2858, 73 L.Ed.2d 598 (1982). This court, however, is assisting in the exercise of the jurisdiction of the United States District Court for this district. *See In re Color Craft Press, Ltd.,* 27 B.R. 962 (D.C.D.Utah 1983).

in *McComb* applies with equal force to the injunction of the automatic stay imposed by Section 362(a) and to the court's order. Thus, notwithstanding the alleged good faith of the IRS, the court finds that the IRS acted in contempt of its order and of the automatic stay.

 Having found a civil contempt, the court may award compensation to the debtors. Actual loss measures compensatory fines for civil contempt. *Reed, supra* at 276. Attorneys fees may be a part of the compensation. *Id. See also Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224 at 227 (10th Cir.1980). In addition, the court may order the IRS to pay debtors their 1982 tax refund forthwith.

 The IRS argues that contempt sanctions are not appropriate because the IRS was confused by ambiguity in the case law on the issue of retention of tax overpayments, relying in part on *United States v. Norton, supra,* and *In re Hammett, supra.* Thus, the IRS argues, neither the automatic stay nor the court's order mailed to the IRS on August 31, 1981 was a clear and definite order, a prerequisite to a finding of contempt. Neither case supports the position taken by the IRS in this case.

In *Norton,* it was held that criminal contempt sanctions were not appropriate against the IRS because:

> Whether the retention of tax overpayments constitutes a setoff in violation of the automatic stay is a much litigated and controversial question. Inasmuch as the answer to that question was unclear at the time the tax refund was withheld by the Government, we believe that the IRS did not have fair warning that its retention of the funds was per se a violation of the automatic stay.

717 F.2d at 774–775. *Norton,* however, does not support the IRS' arguments in this case. First, *Norton* involved criminal not civil contempt sanctions. Second, *Norton* involved a violation of Section 362(a)(7). This case involves a violation of Section 362(a)(6). Moreover, the IRS arguably had setoff rights under Section 553 in *Norton.* No such rights exist in this case. Finally, *Norton* squarely holds that the IRS is bound, under 11 U.S.C. § 1327, by a confirmed plan and its payment schedule. 717 F.2d at 774.

*In re Hammett* likewise provides no support for the IRS' position in this case. *Hammett* said:

> [T]here is a conflict in the bankruptcy courts as to whether the IRS has the right to retain a tax refund pending the outcome of a petition for relief from the automatic stay. In light of this conflict, we conclude that the government's argument was not without substance and was not based on a wholly specious reading of the statute. [citations omitted]. As a result, we find that the IRS was not motivated by an intent other than that of lawfully setting off the $211.00 tax credit. The debtor had failed to carry his burden of showing bad faith or gross misconduct by the government. Such a showing is necessary for an award of attorney's fees under general equitable principles.

28 B.R. at 1018. Even if *Hammett* correctly states the law, it does not apply here. In *Hammett,* the tax refund in question was for the year in which the debtor's petition was filed, thus giving the IRS at least a colorable argument that some portion of the pre-petition refund was subject to a right of set off. Here, the tax refund is wholly post-petition. In *Hammett,* the IRS had petitioned the court for relief from the stay before the allegedly contemptuous retention of debtor's tax refund.[7] Here, the

---

**7.** The district court's opinion in *Hammett* is unclear on the basis for the bankruptcy court's finding that the IRS acted contemptuously. At some points in the opinion, it appears that the IRS was held in contempt solely for the filing a complaint seeking relief from the stay. *See* 28 B.R. at 1014 ("The question presented by this appeal is whether the Bankruptcy Court abused its discretion in awarding attorney's fees against the IRS in an action to quash the government's complaint for failure to comply with the Rules of Bankruptcy Procedure."); *See also* 28 B.R. at 1016 ("The debtor broadly accuses the IRS of 'unlawful tactics' since the

IRS made no prior request for relief from the stay.

*Norton* and *Hammett* refer to conflicting case law on the question of the retention by the IRS of the tax refunds of Chapter 13 debtors. While there is divergent case law on the general issue of the IRS' retention of overpaid taxes, not one of the published opinions to date supports the IRS' position in this case. In no published opinion has any court approved *ex post facto* the post-confirmation retention of a tax refund arising from a post-petition tax year.[8] *See In re Murry,* 15 B.R. 325 (Bkrtcy.E.D.Ark. 1981); *In re Lawrence,* 19 B.R. 627 (Bkrtcy. E.D.Ark.1981); *In re Wilson,* 29 B.R. 54 (Bkrtcy.W.D.Ark.1982); *In re Mealey,* 16 B.R. 800 (Bkrtcy.E.D.Pa.1982); *In re Holcomb,* 18 B.R. 839 (Bkrtcy.E.D.Pa.1982); *In re Harris,* 19 B.R. 624 (Bkrtcy.E.D.Pa.1982); *In re Hackney,* 20 B.R. 158 (Bkrtcy.D.Idaho 1982); *In re Powers,* 28 B.R. 86 (Bkrtcy.E. D.Pa.1983); *In re Alexander,* 31 B.R. 389 (Bkrtcy.S.D.Ohio 1983). In each of the published Chapter 13 opinions, the tax refund in question arose either from a tax year which ended before the filing of the petition or from a tax year which began before the filing of the petition and ended after the filing of the petition. Thus, the IRS' position in this case is without support in the case law. Ambiguities in the case law on the right to withhold, post-confirmation in a Chapter 13 case, tax refunds from a tax year which begins and ends post-peti-

tion simply do not exist. For these reasons the IRS' argument that there was no clear and definite order in this case must be rejected.

The provisions of 11 U.S.C. Section 1327(a) make the violation of the stay in this case more egregious than it otherwise might have been. Section 1327(a) provides that:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

After the February 4, 1982 confirmation of debtors' plan, the IRS was bound by the payment schedule proposed by the plan. After confirmation, when the debtors' 1982 tax return was filed, the IRS had no right to withhold debtors' tax refund. Thus, even if the "bad faith" or "gross misconduct" test announced by *Hammett* is good law, the wholly unjustified actions of the IRS in this case support an inference of gross misconduct. Debtors have made the payments required by their plan. "To allow the IRS to retain their overpayment as extra security on the debt would seriously compromise the powers of the Bankruptcy Court, the capacity of debtors to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster." *United States v. Norton, supra* at 774.[9]

government filed a complaint to lift the automatic stay *after* the debtor's Chapter 13 plan had been confirmed."); 28 B.R. at 1017 ("The debtor concludes ... that the filing of a complaint ... amounts to 'unlawful tactics' by the IRS. These tactics, according to the debtor, are punishable by an award of counsel fees against the government.") Elsewhere in the opinion, however, it appears that the IRS was held in contempt for retaining the debtor's tax refund. *See* 28 B.R. at 1019 ("[I]t is uncontroverted that the IRS had actual knowledge of the debtor's filing ... and of the applicability of the stay provisions at the time it retained the debtor's tax refund. We must determine, therefore, whether the agency's *prior* attempt to lift the automatic stay distinguishes this case from those relied on by the debtor.")

**8.** Some courts have, by standing order, permitted the IRS to setoff tax refunds against tax

debts. *See In re Norton, supra* at 623, 625 n. 7. Other courts have declined to make such an order. *Id.* One court entered such an order on February 28, 1983. *See In re Internal Revenue Service Liabilities and Refunds in Chapter 13 Proceedings,* 10 B.C.D. 1440 (D.C.M.D.Tenn. 1983). That order, however, was revoked on May 18, 1983 because the court found that it conflicted with several bankruptcy statutes. *In re Internal Revenue Service Liabilities in Chapter 13 Proceedings,* 30 B.R. 811 (D.C.M.D.Tenn. 1983).

**9.** It may be that the IRS, on these facts, could be held in contempt of the court's order confirming debtors' plan. Indeed, the evidence seems clearly to support such a finding. Nevertheless, because the order to show cause in this matter related solely to violations of the automatic stay, as a matter of fairness the

## WHICH COERCIVE AND COMPENSATORY REMEDIES ARE APPROPRIATE IN THIS CASE

 The IRS should be required to release the remainder of debtors' tax refund with interest as provided by law. Moreover, the IRS should be ordered to compensate debtors for costs and attorneys fees incurred by the debtors in their attempt to convince the IRS to return what should not have been withheld. These costs and fees are losses or damages sustained by the debtors by reason of the IRS' noncompliance with the automatic stay and the order of this court.

On the issue of the measure of costs and fees in this case, some background is necessary. Debtors' order to show cause against the IRS in this case was issued simultaneously with an order to show cause against the IRS and an agency of the State of Utah in three other cases. The hearing held in this matter and the briefs filed with the court addressed all four of the cases. Debtors in all four of the cases employed the same attorney. The attorney filed an affidavit which covered all four cases and itemized the work performed but did not divide the time or costs between the four cases. The total time spent was 28 hours, for which the attorney requests a fee of $1,995.00. Costs total $37.12. Debtors prevailed in three of the cases but lost in the fourth case.[10]

Based upon a review of the files in all four matters and a comparison of the files with the affidavit of the attorney, it appears that the attorney's time was equally divided between the four cases. Because of the small amount of costs involved, an equal apportionment of costs seems appropriate. Therefore, in each case in which the debtors prevailed, the IRS or the State of Utah, as the case may be, should be required to pay one-fourth of the $1,995.00 in fees and one-fourth of the $37.12 in costs.

issue of contempt of the order of confirmation should be left for another day.

10. Opinions in two of the four cases are issued simultaneously with this opinion. *See In re Richard Mark Ashby,* 36 B.R. 976 and *In re Jack*

This case is one in which debtors prevailed. Thus, the IRS should be required to pay to debtors the sum of $478.75 in fees and the sum of $9.28 in costs.

An order is entered with this opinion.

*and Vickie Warden,* 36 B.R. 968. An opinion in the fourth case was issued on December 12, 1983. *See In re David Paul and Penelope A. Johnson,* 36 B.R. 958.