In re FARRAR McWILL, INC., Debtor.

Bankruptcy No. 3–82–00607.

United States Bankruptcy Court,
W.D. Kentucky.

Dec. 16, 1982.

Thomas W. Meeker, Louisville, Ky., for debtor-in-possession.

Wallace H. Spalding, Jr., Louisville, Ky., and George W. Warwick, Jr., Anchorage, Ky., for Stuart G. Levy, Jr.

## MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This bankruptcy proceeding comes before the Court on application of Farrar McWill, the debtor-in-possession, to reject an executory contract with Stuart G. Levy, Jr., filed on May 14, 1982. Subsequently, on June 28, 1982, Levy, by counsel, timely filed an objection to the debtor's application.

Originally, the debtor-in-possession filed a petition seeking relief pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C., on March 19, 1982. Thereafter, the debtor sought to reject a number of leases and executory contracts pursuant to 11 U.S.C. § 365, which states in pertinent part:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Stuart G. Levy, Jr., by counsel, objects to the application for authority to reject the contract alleging that the agreement in question entered into on September 2, 1979, is not an executory contract in any particular but is an integral part of the consideration for the purchase by the debtor-in-pos-

session of the common stock and preferred stock of Levy Brothers, Inc., owned by Levy. As such, the payments due are alleged to constitute a promissory obligation due Levy, and payment of this obligation was so structured simply to take advantage of certain tax rate provisions.

Farrar McWill, Inc., the debtor-in-possession, contends that the "Consulting Agreement" is by its very terms and provisions an executory contract susceptible to rejection pursuant to section 365.

### Findings of Fact

The agreement entered into by the parties on September 2, 1979, styled "Consulting Agreement" provided that Levy agreed to provide special consulting services to the debtor-in-possession while agreeing not to participate in any department or clothing store business within a 100-mile radius of Louisville in return for certain bi-monthly payments to be made by the debtor until the expiration of the agreement on August 31, 1983. The agreement also contained certain termination clauses which state in part:

"[b] It is agreed that this Agreement may be terminated by Consultant at any time upon sixty (60) days' notice in writing to the Company, and the Company shall thereafter have no further liability of any nature to Consultant. It is further agreed that this Agreement may be terminated by the Company at any time for cause. For purposes of this Agreement "cause" shall mean action by the Consultant involving a material breach of the terms of this Agreement, moral turpitude, or willful obstruction of Company's business operations resulting in material damage to Company . .

. . . If Consultant shall be terminated by the Company pursuant to the provisions of this paragraph 6 and Consultant shall contest the validity of such termination, the Company agrees that it will continue to pay Consultant at his rate of remuneration due hereunder immediately prior to such termination until such dispute is resolved; and in the event it is determined that such termination by the Company was justifiable, Consultant shall immediately repay to the Company, all such remuneration received after the date of such termination, or if it is determined that such termination by the Company was not justifiable, Consultant shall retain such remuneration."

Further, paragraph (4) of the agreement provides that during the term of the agreement the Consultant's permanent work residence would be in Jefferson County, Kentucky.

The issue before the Court, then, is whether the September 2, 1979 "Consulting Agreement" falls within the definition or characterization of an "executory contract."

### Conclusions of Law

■ A comprehensive analysis of the term "executory contract" as used in the bankruptcy context is found in Professor Vern Countryman's two-part article entitled *Executory Contracts in Bankruptcy,* 57 Minn.L.Rev. 439 (1973) and 58 Minn.L.Rev. 479 (1974). This article concerns executory contracts under § 70b of the Bankruptcy Act, the statutory predecessor to § 365 of the Bankruptcy Code.

Professor Countryman, in analyzing court decisions on the subject of executory contracts in bankruptcy, states that the term does not encompass contracts fully performed by the nonbankrupt party, where the bankrupt party has only partially performed or not performed at all. 57 Minn.L. Rev. 439, 451 (1973). Nor does the term encompass contracts fully performed by the bankrupt party but not fully performed by the nonbankrupt party. 57 Minn.L.Rev. 439, 458 (1973). The term executory contract, however, does cover a contract where the obligations of both parties remain at least partially and materially unperformed at the time of bankruptcy. In other words, an executory contract is one under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the

other. 57 Minn.L.Rev. 439, 460 (1973). See also *In Re Rovine Corp.*, 6 B.R. 661, 3 C.B. C.2d 114 (Bkrtcy.W.D.Tenn.1980).

While the definition of an executory contract is not found in the Bankruptcy Code, the legislative history of section 365 states in part:

"Though there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides. A note is not usually an executory contract if the only performance that remains is payment. Performance on one side of the contract would have been completed and the contract is no longer executory." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303.

Further, the case of *In Re Jolly*, 574 F.2d 349 (6th Cir.1978), after a thorough analysis of the nature of an executory contract, denotes that:

"... executory contracts involve obligations which continue into the future. S.Rep. No. 94–458, 94th Congress, 1st Sess. (1975). They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future." Id. at 351.

Section 365, 11 U.S.C., allows the rejection or acceptance of executory contracts with the approval of the Court:

"(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

■ Apparently, the parties before the Court would agree that rejection cannot occur without Court approval, but differ regarding the standard of review. Counsel for Levy argues for a business judgment test. See e.g., *In Re Minges*, 602 F.2d 38 (2d Cir.1979). Counsel for debtor-in-possession argues that a rejection should be granted as a matter of course except in

extraordinary or special circumstances. See *In Re Summit Land Co.*, 13 B.R. 310, 7 B.C.D. 1361, 4 C.B.C.2d 1431 (Bkrtcy.D. Utah 1981). There is a third standard, not here asserted, which is denoted as the "burdensome" standard as used in *In Re High Fliers, Ltd.*, 7 B.C.D. 747 (S.D.Calif.1981).

The reasoning utilized in *Summit Land Co., supra,* is persuasive in the instant situation:

"... Section 365(a) by its terms is subject to to Section 365(d). Section 365(d)(1) provides that, in Chapter 7, executory contracts are deemed rejected unless assumed or rejected by the trustee within 60 days from the order of relief; Section 365(d)(2) provides that, in Chapter 11, the trustee may assume or reject at any time before confirmation of a plan. Section 365(d)(1), which allows automatic rejection, abridges the court approval requirement of Section 365(a). Section 365(d)(2) allows the court to set a time within which the trustee must accept or reject; yet having forced the election, it would be incongruous if the court did not approve the choice. Moreover, the trustee can treat executory contracts in a plan. See 11 U.S.C. Section 1123(b)(2). The plan is confirmed with judicial oversight but the acceptance or rejection of contracts is not approved in the sense contemplated by Section 365(a). This leaves ... assumption or rejection during the hiatus between petition and plan in Chapter 11 subject to court approval. No reason, however, for distinguishing between these situations and those excluded from the coverage of Section 365(a) comes to mind....

In any event, court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course. To begin with, this rule places responsibility for administering the estate with the trustee, not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code. Second, this rule expedites the administration of estates, another goal of the Bankruptcy

**316**

Reform Act. Third, the rule encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements...." 13 B.R. 310, 4 C.B.C.2d at 1437.

### Memorandum

Questioned here is not the wisdom of acceptance or rejection but rather the question of whether the Consulting Agreement is an executory contract capable of either elective.

Here, the debtor cannot compel performance by Levy of the contract by electing to deem the Consulting Agreement as part of the stock purchase agreement. Levy has the unilateral right to rescind the agreement without cause and would thereafter be under no constraint as to competing against the debtor, and only forfeiting his entitlement to continue to receive payments during the term of the agreement. Conversely, the debtor's right to terminate is limited to a material breach or for one of the "causes" specifically enumerated.

While the consulting agreement may well have been incentive or convenience in the sale of the business, this is not an uncommon practice in the commercial setting. However, the Consulting Agreement itself falls squarely within the definitive realm of an executory contract, and as such is subject to rejection by the debtor-in-possession.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, in view of the foregoing and the Court being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that the Consulting Agreement between the debtor and Stuart G. Levy, Jr., be and is an executory contract subject to rejection under the provisions of 11 U.S.C. § 365. This is a final order.