In re WALAT FARMS, INC., Debtor.

WALAT FARMS, INC., a Michigan corporation, Plaintiff,

·v.

UNITED STATES of America, acting Through the U.S. DEPARTMENT OF AGRICULTURE, Agricultural Stabilization and Conservation Service and Commodity Credit Corporation, Defendant.

Bankruptcy No. 85–09344.

Adv. No. 86–9031.

United States Bankruptcy Court, E.D. Michigan, N.D.

Jan. 27, 1987.

See also, Bkrtcy., 64 B.R. 65, Bkrtcy., 70 B.R. 330.

Randall L. Frank, Bay City, Mich., for debtor.

Michael J. Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for defendant.

## MEMORANDUM OPINION DENYING DEBTOR IN POSSESSION'S REQUEST FOR TURNOVER OF FUNDS

ARTHUR J. SPECTOR, Bankruptcy Judge.

The facts are not disputed. In 1984, the debtor Walat Farms, Inc., (hereafter plaintiff) obtained loans from the Commodity Credit Corporation (hereafter defendant), secured by liens on debtor's 1984 corn and soybean crops. In February, 1985 the debtor signed a contract with the defendant to participate in the 1985 Price Support and Production Adjustment Program. The program required the debtor to refrain from planting crops and to maintain ground cover on its farmland in return for which the defendant would pay a deficiency payment to the farmer based on a statutory formula. As stated in the defendant's brief, deficiency payments are essentially subsidies, designed to stabilize farm income by reducing the amount of crops taken to market. The formula for determining the deficiency payment is set forth in 7 C.F.R. § 713.108 and, according to the defendant, read as follows:

The deficiency payment rate shall be the amount by which the target price for the crop exceeds the higher of: (1) The na-

tional weighted average market price received by farmers for the crop year during the first five months of the market year ... or (2) the national loan rate established for the crop.

At present approximately $460,000 is owed on the 1984 loans. The value of the debtor's crops in storage falls short of covering the amount of the lien on the crops by approximately $28,000. The debtor satisfactorily completed the 1985 contract with the defendant.

On July 11, 1985, the debtor filed its Chapter 11 petition. It filed this adversary proceeding on April 24, 1986 to compel the defendant to turn over the 1985 contract's deficiency payment.[1] While acknowledging that the deficiency of $33,641.54 is owed, the defendant claims that it has a right, under 11 U.S.C. § 553(a), to set off that debt against the money owed to it from the 1984 crop loans. That section states in pertinent part that, with irrelevant exceptions, the Bankruptcy Code

Does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

A leading commentator explains:

Section 553(a) speaks of the set-off of "a mutual debt" owed by a creditor to the debtor against the creditor's claim against the debtor. Thus, mutuality is a requirement for any right of set-off. The mutuality requirement was strictly construed under the former Act and is strictly construed under § 553.

The term "mutual debt" is not defined in the Code. To be mutual, the debts must be in the same right and between the same parties, *standing in the same capacity.*

4 *Collier on Bankruptcy*, ¶ 553.04[1], [2], pp. 553–16, 18 (15th ed. 1986). Since the date on which the case is commenced is the date upon which all rights are adjusted,

To be eligible for set-off, both the mutual claim of the creditor and debt of the debtor must have arisen prior to the commencement of the case. Claims arising after the commencement of the case lack the requisite mutuality for set-off, because the postpetition trustee or debtor in possession is a different entity from the prepetition debtor.

*Collier, supra,* ¶ 553.08, p. 553–37.

■ The defendant claims that since the formula for determining whatever payment would be forthcoming to Walat Farms, Inc. was set at the creation of the contract, the amount owed should be treated as a pre-petition debt owed the debtor, and not a post-petition debt due the estate. Therefore, it argues that the mutuality required under 11 U.S.C. § 553 is present.

The defendant relies on *In re Wilson*, 29 B.R. 54 (Bankr.W.D.Ark.1982). In *Wilson*, the Chapter 13 debtor owed the Internal Revenue Service a tax obligation from the year ending 1978. The Chapter 13 petition was filed on November 19, 1980. The debtors timely filed their tax returns for the calendar year 1980 and alleged an overpayment of taxes. Neither party disputed the obligations owed the other; instead, the dispute centered around whether or not the IRS could set off the 1980 tax refund against the debtors' pre-petition obligation. The debtors claimed the debts were not mutual as their entitlement to the refund did not arise until after the petition in bankruptcy was filed, since there could not have been a determination of the amount of the refund prior to January 1, 1981. The bankruptcy court determined that the right to a tax refund, albeit inchoate, was property of the estate for purposes of § 541, and must therefore be considered a debt owed to the debtor pre-petition, at least as to the 322/365th's of the year represented by the days in 1980 which preceded the filing of the petition for relief.

We have no argument with the conclusion reached in *Wilson* but it is factually

---

**1.** The debtor in possession also participated in the 1986 support programs and likewise sued for turnover of that year's deficiency payment. It was turned over by the defendant.

dissimilar in important ways. Clearly the right to a tax refund in *Wilson* arose pre-petition since the debtor had overpaid his taxes pre-petition. The plaintiff correctly distinguishes that case on the ground that here we are dealing with an executory contract while *Wilson* dealt with debts not arising out of contract.

Professor Countryman defined an executory contract as

A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

V. Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn.L.Rev. 439, 460 (1973). When the petition for Chapter 11 relief was filed on July 11, 1985, the debtor still owed performance of its duties in a number of substantial ways such as the duty to not plant crops in the set-aside acres, to keep cover on those acres, etc. If a farmer in the program fails to fulfill the contract's obligations during the course of a growing season, the CCC can utilize a choice of damage remedies, among them being the right to refuse to pay anything to the farmer.[2] Of course, the defendant still owed the entirety of its obligation, that is, to pay the deficiency amount. It is plain to see, therefore, that the 1985 agreement was an executory contract. It follows then that if the contract is properly assumed by the debtor in possession, any right to a deficiency payment could only arise post-petition, and be owed to the debtor in possession *qua* trustee, and not the debtor. Consequently, mutuality would not exist and setoff would be disallowed. *In re Braniff Airways, Inc.*, 42 B.R. 443, 449, 12

C.B.C.2d 610 (Bankr.N.D.Tex.1984); *Collier, supra,* ¶ 553.08.

For the same rationale we reject the defendant's assertion that *In re Fred Sanders Co.*, 33 B.R. 310 (Bankr.E.D.Mich.1983) is controlling. That case declared that a utility refund which arose from pre-petition overpayments by the debtor but which was not ordered repaid by the Michigan Public Service Commission until after the filing of the Chapter 11 petition, was a pre-petition obligation which could be set off against a pre-petition claim of the utility company. The court held that the mere fact that the refund was not payable until after the Michigan Public Service Commission had approved it did not transform a pre-petition overpayment by the debtor into a post-petition obligation to repay it. The court stated:

The refund claim here is rooted in prepetition transactions between the debtor and the utility. All of the facts necessary to determine the debt and the claim occurred prior to the filing of the bankruptcy petition. The right to a refund is not traceable to any postpetition transaction between the debtor and the utility.

*Id.* at 312. Our case is quite different: if the debtor in possession had not continued the set-aside and the ground cover during the post-petition period, conceivably no debt at all would be owed it by the defendant. Moreover, neither it nor *Wilson* involved an executory contract, that is, a contract assumable by the trustee or debtor in possession; therefore, neither are apposite.

Reliance by the defendant on *In re Matthieson*, 63 B.R. 56 (Bankr.D.Minn.1986) is also misplaced. *Matthieson* dealt with

**2.** Defendant's Exhibit A, the price support contract, at paragraph 8 stated as follows:

If there is non-compliance with any of the terms and conditions of this contract or the applicable regulations found in 7 C.F.R. Part 713, which are incorporated by reference as a part of this contract, the operator and each producer agree that:

(a) program benefits which may be available under this contract for a crop may be withheld.

(b) any deficiency or diversion payment received may be required to be refunded together with interest from the date of disbursement to the date of refund, as well as any applicable late payment charges.

(c) payment of liquidated damages may be required. (Applicable formula for determining liquidated damages omitted.)

Chapter 7 cases. The case did not deal with executory contracts in a Chapter 11 setting, and therefore the opinion properly did not discuss the issue. Apparently [3] this was because, pursuant to § 365(d)(1), the pre-petition contracts were not timely assumed and so were deemed rejected. Since rejected executory contracts are themselves considered pre-petition unsecured claims, § 365(g), the necessary mutuality for use of § 553 existed; hence, the government obligations were available for set-off against the pre-petition crop loans obtained by the debtors. In essence, *Mathieson* adds nothing to *Wilson* and *Fred Sanders*.

Section 365 of the Bankruptcy Code provides the standards by which such contracts are to be treated. Section 365(a) states that the debtor in possession, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.[4] In Chapter 11 cases such as this, § 365(d)(2) provides that the debtor in possession may assume or reject "at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the [debtor in possession] to determine within a specified period of time whether to assume or reject such contract or lease." The debtor in possession has not yet moved to assume or reject the contract at issue here; nor has the defendant moved for an order under § 365(d)(2) to compel it to do so within a fixed time.

■ The plaintiff argues that notwithstanding the express language of § 365(a), its conduct in fulfilling the contract amounted to an assumption in fact, obviating the need for express approval by the Court. It argued that three cases support

the assumption in fact proposition: *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 7 B.C.D. 69, 3 C.B.C.2d 484 (Bankr.S.D.N.Y. 1980); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 9 B.C.D. 505 (Bankr. S.D.N.Y.1982) and *In re Midwest Service & Supply Co.*, 44 B.R. 262 (D.Utah 1983).[5] Although these cases do indeed seem to support the plaintiff's theory, there is a line of cases which is contrary.

Stating the contrary view that § 365(a) requires court approval for assumption or rejection is *In re Whitcomb & Keller Mortgage Co.*, 715 F.2d 375 (7th Cir.1983). *Whitcomb & Keller* involved a Chapter 11 debtor in possession who had continued to receive and pay for computer services during the administration of the estate provided by Data Link Systems, Inc. Data Link sought to terminate its services to the estate and was enjoined by the bankruptcy court from doing so. Data Link's answer to the debtor in possession's complaint for a temporary restraining order included a counterclaim which requested the bankruptcy court to either (1) declare that the debtor in possession had assumed the executory contract by its request that the bankruptcy court enforce the executory contract and by its continued receipt of the benefits under the executory contract or (2) require the debtor in possession to decide whether to assume or reject the executory contract within a specified period of time before confirmation of the plan.

The bankruptcy court found that the debtor in possession had not assumed the executory contract and denied Data Link's request to require it to assume or reject the contract within a specified period of time. Later, the debtor in possession requested authority to reject the executory

---

3. "Apparent" because it seems the trustee never argued that he had assumed the pre-petition government contracts.

4. Section 1107 states that "a debtor in possession shall have all the rights, ... and powers, and shall perform all the functions and duties, ... of a trustee serving in a case under this chapter."

5. The plaintiff stated that Code cases have consistently held in this manner. *Also see, In re Ridgewood Sacramento, Inc.*, 20 B.R. 443, 9 B.C.D. 14 (Bankr.E.D.Cal.1982). This is not true. A significant number of Code cases quote the opposite opinion, stating that § 365(a) means what it says: court approval is needed. However, *to the extent that these cases deny setoff until formal rejection* of the contract or lease, we follow them.

contract, which the bankruptcy court granted.

On appeal, the Seventh Circuit Court of Appeals found that the executory contract between the debtor in possession and Data Link remained in effect until the bankruptcy court affirmed the debtor in possession's decision to reject it. It was proper for the debtor in possession to seek a temporary restraining order to prevent Data Link from withholding its services under the contract pending the debtor in possession's action. The bankruptcy court's refusal to require the debtor in possession to assume or reject the contract within a specified period of time was not an abuse of discretion as Data Link had been paid for all post-petition services and was in any event adequately protected. Consequently, Data Link was not prejudiced by the debtor in possession's continued use of the computer services during the administration of the estate. Such use would not support a finding that the debtor in possession had assumed the contract in fact or that Data Link was entitled to an administrative expense priority. Nor did the debtor in possession's motion for an order compelling Data Link to continue servicing it constitute an assumption in fact of the contract. The court held that assumption of an executory contract could only be effected through an express order of the court. It found that no such order was issued in the case nor was there any evidence that the debtor in possession exhibited any intention of assuming the contract when the court enjoined Data Link's termination of services, as the temporary restraining order was directed solely toward maintaining the status quo during the administration of the estate. *Id.* at 378–380.

In agreement with *Whitcomb & Keller* is *In re Speed Fab-Crete of Nevada,* 57 B.R. 720, 722 (Bankr.D.Nev.1986), in which the court held that the debtor in possession's continuing to perform a construction contract after the Chapter 11 petition was filed was not the equivalent of assuming the

executory contract to do so. The court correctly noted that continuing the performance simply maintained the status quo "while the assumption of an executory contract binds the reorganized debtor in the future and creates new administrative obligations" in the interim. Section 365(a) is drafted to permit the trustee or debtor in possession a degree of flexibility which "assumption in fact" theory would erode. Therefore, the Code requires an express order of the bankruptcy court approving the assumption or rejection of a lease or contract. *Id.* at 722–723. *See also In re B. Siegel Co.,* 51 B.R. 159, 163, n. 4, 13 B.C.D. 294 (Bankr.E.D.Mich.1985) ("There is no question but that performance by a debtor under an executory contract after the filing of a petition in bankruptcy does not constitute assumption"); *In re Kelly Lyn Franchise Co.,* 26 B.R. 441 (Bankr.M. D.Tenn.1983).

Leading commentators agree that court approval of assumption or rejection is required:

> The manner in which a debtor or trustee can assume a lease [or executory contract][6] is narrowly circumscribed since Code § 365(a) provides that an assumption "is subject to court approval." Therefore, it is unlikely that a lease [or executory contract] can be assumed absent the filing and approval of an application to allow assumption ... It is doubtful that assumption could occur by inaction in a Chapter 11 reorganization case under the Code since the primary reason for the ability to reject a contract is to rid the estate of burdensome obligations and it is unlikely that the court would deprive a debtor this right. Assumption probably requires affirmative action by the trustee coupled with court approval.

1 *Norton Bankruptcy Law & Practice,* § 12.14 (1986).

> The basic power of the trustee to assume or reject executory contracts and unexpired leases is set forth in § 365(a). The decision is one that must be made with

---

**6.** Since there is no distinction between leases and executory contracts for purposes of

§ 365(d)(2), the quotation carries equal weight with respect to executory contracts.

the approval of the court, although in a liquidating case the mere passage of time without action will constitute a rejection. 2 *Collier on Bankruptcy*, ¶ 365.03, p. 365–15 (15th ed. 1986).

Finally, Bankruptcy Rule 6006 states in pertinent part:

(a) A proceeding to assume, reject, or assign an executory contract, including an unexpired lease, other than as part of a plan is governed by Rule 9014.... (c) When a motion is made pursuant to subdivision (a) ... of this rule, the court shall set a hearing on notice to the other party to the contract and to other parties in interest as the court may direct.

The Advisory Committee Note to Rule 6006 also states that "Section 365(a) of the Code requires court approval for the assumption or rejection of an executory contract by the trustee or debtor in possession ... Subdivision (a) by referring to Rule 9014 requires a motion to be brought for the assumption, rejection, or assignment of an executory contract." Bankruptcy Rule 9014 in turn states "In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Obviously then, in order to effectuate an assumption of an executory contract, a debtor in possession must file a motion, serve the other party to the contract, and afford it an opportunity to be heard on the request. *In re Kelly Lyn Franchise Co., supra.* These things have not yet occurred in the case at bench.

While strict adherence to the language of § 365(a) might appear overly simplistic, it is important in that it allows a debtor in possession the flexibility intended by the Bankruptcy Code in deciding whether or not to assume or reject contracts or leases. *See In re Whitcomb & Keller, supra; In re Speed-Fabcrete, Inc., supra.* Court approval also provides a potential safeguard since it is only after hearing argument of the opposing parties that the court can order assumption or rejection. *In re Kelly Lyn Franchise Co., supra.*

In conclusion we reach the following decision: In a Chapter 11 context, a debtor in possession may assume or reject a contract at any time prior to confirmation pursuant to § 365(d)(2), and cannot be held to have assumed it in fact, since § 365(a) and Bankruptcy Rule 6006 provide that assumption or rejection is subject to court approval, after hearing on notice to interested parties. Therefore, until an appropriate motion to assume is brought and court approval of the assumption is obtained, the trustee's motion for turnover is premature. And if the plaintiff assumes the 1985 contract with the defendant, because the debt which arose thereunder would be a debt owed the debtor in possession *qua* trustee and not to the debtor, the mutuality necessary under § 553(a) will not exist, and so the defendant's motion for judgment in its favor will likewise be denied.[7] An order consistent with this opinion will be entered contemporaneously herewith.

---

7. At the pre-trial conference, the parties agreed that there was no factual dispute and that the case could be decided on briefs.