Nancy Stein Nowak, Asst. U.S. Atty., for U.S. of America—Farmers Home Admin.

**In re Danny Neil & Linda Fay FRYAR, Debtors.**

**Bankruptcy No. 87–70139.**

United States Bankruptcy Court, W.D. Texas, Midland–Odessa Division.

Sept. 1, 1988.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

On the 10th day of May, 1988, the Court called for hearing the United States of America's Motion to Modify Stay Authorizing Setoff. The Court has considered the evidence, arguments of counsel, and post-hearing briefs. The Court enters this opinion as its findings of fact and conclusions of law.

The Debtors are farmers who had filed a petition under Chapter 12 on April 3, 1987. The case was converted to Chapter 11 on August 7, 1987. Danny Fryar (the Debtor) had entered into four pre-petition contracts to participate in the 1987 price support and production adjustment programs with the

Agricultural Stabilization and Conservation Service (ASCS) which receives funds for the programs from the Commodity Credit Corporation (CCC). The contracts consist of a single page, which identifies the producer, the crop and the acreage, plus an appendix, Appendix to Form CCC–477 (Appendix), which contains the terms and conditions of the contract.

The Debtor was indebted to the Farmers Home Administration (FmHA) on pre-petition loans which are secured by liens on equipment and crops. The Debtor received 1987 advance benefit payments of approximately $42,000.00, which have been applied to the outstanding indebtedness owed to FmHA. The FmHA filed a proof of claim which affirmatively stated that the claim was not subject to any setoff. By a previous order of this Court, the CCC commodity certificates were determined not to be cash collateral of the FmHA. The Debtor is now eligible to receive final 1987 benefit payments in the form of commodity certificates with a face value of approximately $22,000.00. The parties have stipulated that these certificates can be sold on the market at greater than face value. The FmHA now seeks to setoff the face value of the certificates due from ASCS–CCC against the indebtedness owed by the Debtor.

The contract requires the Debtor to protect the designated land by planting cover and preventing erosion. The Debtor is required to maintain the cover or practice through December 31, 1987 except for approved fall plantings. Appendix (3)(B)(2). The parties have stipulated that ninety per cent of the Debtor's performance under the contract was performed post-petition.

## DISCUSSION

The setoff of the commodity certificates against the debt to FmHA is initially controlled by section 553 of the Bankruptcy Code. That section, in pertinent part, provides:

> "... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ..."

11 U.S.C. section 553(a).

The first requirement is that a right to offset must exist outside title 11. The contract states that

> "any payment ... shall be made by CCC without ... regard to any claim or lien against the *crop*, or proceeds therefrom, which may be asserted by any creditor, except agencies of the U.S. Government. Setoffs for debts owed to agencies of the U.S. Government shall be made." (Emphasis added).

Appendix, paragraph 17. As noted above, FmHA does have a lien on the crops and CCC has a contractual right to allow the setoff. The asserted right to setoff is a contractual right that CCC has. However, CCC had opted to make the final deficiency payment in the form of commodity certificates. Setoffs of these certificates is governed by 7 C.F.R. 770.4(b)(2), which states:

> "Commodity certificates shall not be subject to any lien, encumbrances or other claim or security interest except that of an agency of the United States Government arising specifically under Federal statute."

When the choice to issue commodity certificates was made, the setoff could only be allowed if FmHA has a right to setoff that "arises specifically under Federal statute." The right to setoff is granted to "the head of an executive or legislative agency." 31 U.S.C. sec. 3716(a).[1] Thus, the contractual right of setoff is not defeated by the form of payment CCC has chosen in this instance.

---

1. The FmHA is currently not exercising its right of administrative offset except where, as here, a judicial ruling on the propriety of the offset will be made. This Court does not find this fact alone, as a waiver of the statutory grant of power. The Court notes that recent decisions have held this regulation, 7 C.F.R. 770.4(b)(2), invalid to the extent it is used to defeat a properly perfected security interest under state law. *See e.g., In re George*, 85 B.R. 133 (Bankr.D.Kan. 1988). This Court does not see that security interest issue is present under these facts.

The next requirement is that of mutuality of the parties. "The debts must be in the same right and between the same parties, standing in the same capacity." 4 *Collier on Bankruptcy*, para. 553.04[2] (15th ed.1988). The fact that the United States operates through different agencies does not mean that each agency "stands in a different capacity." *See Cherry Cotton Mills v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946); *In re Sound Emporium*, 48 B.R. 1 (Bankr.W.D.Tex. 1984), *aff'd.* 70 B.R. 22 (W.D.Tex.1987). Nevertheless, at least one court has held that the different U.S. agencies should not be considered the same party in reorganization cases. In *In re Rinehart*, 76 B.R. 746 (Bankr.D.S.D.1987), the court stated:

> "Serious bankruptcy reorganization policy concerns are also raised by this issue. To allow a governmental agency like the SBA, FmHA, or the like to piggyback under the guise of "government" and offset ASCS–CCC farm program payments may effectively deny farmers or ranchers a meaningful opportunity [to] attempt to reorganize in a Chapter 11, 12, or 13 setting."

*Id.* at 754; *see also In re Hazelton*, 85 B.R. 400, 405–06, 17 B.C.D. 680, 683 (Bankr.E.D. Mich.1988) ("Setoff is inconsistent with the purposes of chapter 12 and the rehabilitation of American farmers.") However much this Court may be persuaded by this policy argument, the District Court decision in *Sound Emporium*, which held that the IRS and the U.S. Army are sufficiently identical to allow an offset, controls.

The final statutory requirement is that the debts must be mutual, i.e. the debt owed by ASCS–CCC and the claim by FmHA must both be pre-petition obligations. There is no dispute that the claim by FmHA is a pre-petition claim. The contracts between ASCS–CCC and the Debtor were all entered into pre-petition. However, the contracts were executory on April 3, 1987 when the Debtor filed his petition; the Debtor had certain farming practices to implement and ASCS–CCC owed benefits to the Debtor. *See In re Walat Farms, Inc.*, 69 B.R. 529 (Bankr.E.D.Mich.1987). The Court assumes for the purposes of this discussion that the Debtor's plan provides for the assumption of this contract as no separate motion to assume the contract has been filed. *See* 11 U.S.C. sec. 365(d)(2); Bankruptcy Rule 6006. As the facts prove, the Debtor acted as if the contract was, or will be, assumed and completed the performance required under the contract.

The important issue is not whether the debt owed is on an executory contract but whether ASCS–CCC's obligation to pay is a pre- or post-petition obligation. At least one court has held that when a contract is assumed, the debt is "owed to the debtor in possession *qua* trustee, and not the debtor." *Walat Farms*, 69 B.R. at 531 (relying in part on *In re Braniff Airways, Inc.*, 42 B.R. 443 (Bankr.N.D.Tex.1984). Setoff was not permitted. The Fifth Circuit, in its subsequent opinion in *In re Braniff Airways, Inc.*, 814 F.2d 1030, 1036 (5th Cir. 1987), held that where the debt was *absolutely* owed, even though the debt was not yet "due" or the amount calculated, the debt was a pre-petition obligation for setoff purposes. This Court must determine whether the ASCS–CCC obligation was *absolutely* owed to the Debtor at the time the petition was filed.

"Debt" is defined as "liability on a claim." 11 U.S.C. sec. 101(11). A "claim" is the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. sec. 101(4)(A). Using these terms, the Fifth Circuit's *Braniff Airways* holding was that an unliquidated, unmatured claim could still be a pre-petition claim (and debt) if it is "absolutely" owed when the petition is filed. If a claim is "absolutely" owed, then it is "fixed" and no longer "contingent." "Contingent" means "possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable." *Black's Law Dictionary*, p. 169 (abridged 5th ed. 1983). A "contingent liability" is "one which is not now fixed and absolute, but which will become

so in case of the occurrence of some future and uncertain event." *Id.*

The debt owed by ASCS–CCC to the Debtor was contingent on the Debtor's performance through December 31, 1987. Paragraph 19 of the Appendix states:

"In addition to any refund required ... and in addition to assessing any liquidated damages ..., CCC reserves the right to consider any producer on a farm to be ineligible for any benefits under the contract when there is failure of any producer on the farm to comply with the terms and conditions of the contract."

If the Debtor did not perform, then ASCS–CCC would not be obligated to issue the commodity certificates in question. Accordingly, when the Debtor in possession assumes the contract and completes performance, the Debtor in possession as trustee and not as the debtor has the right to payment. That payment accrues postpetition and is not subject to setoff under section 553. This Court is persuaded that the *Walat Farms* decision is correct on this point. 69 B.R. at 531.

The main decision holding to the contrary is *In re Matthieson*, 63 B.R. 56 (D.Minn. 1986). In *Matthieson*, a Chapter 7 trustee objected to the setoff of 1984 final deficiency payments the amount of which could not be determined until after the debtors filed their petitions. The opinion does not indicate that the ASCS had the option to "consider any producer ineligible" for the failure to perform as the contract under consideration here provides. Thus, under the *Matthieson* facts, the ASCS's liability to the debtor farmers was fixed, but the amount was unliquidated. The *Matthieson* holding was also contrary to *In re Hill*, 19 B.R. 375 (Bankr.N.D.Tex.1982). In *Hill*, the court held that when the deficiency cannot be calculated until after the bankruptcy petition is filed, then the payment is a post-petition payment that cannot be offset. Like *Matthieson*, the *Hill* facts indicate that the liability of ASCS was fixed, but only the amount due remained to be calculated (which could be zero). The *Braniff Airways* holding supports the *Mat-*

*thieson* result, but only where the liability is fixed, i.e. where the debt is "absolutely owed."

The *Matthieson* opinion did not focus upon the executory nature of the contracts (making the liability of ASCS–CCC contingent on assumption and performance postpetition). "Apparently this was because, pursuant to sec. 365(d)(1), the pre-petition contracts were not timely assumed and so were deemed rejected ... Apparent because it seems the trustee never argued that he had assumed the pre-petition government contracts." *Walat Farms*, 69 B.R. at 532, 532 fn. 3. When an executory contract is assumed by the trustee or debtor in possession, the contract becomes a post-petition contract of the estate. *See In re Ridgewood Sacramento, Inc.*, 20 B.R. 443 (Bankr.E.D.Cal.1982). As such, it is no longer a mutual claim which is subject to offset against a pre-petition debt under section 553.

As noted at the outset, the contracts have not been affirmatively assumed by the Debtor in possession. However, the contracts may be assumed or rejected "at any time before the confirmation of the plan." 11 U.S.C. sec. 365(d)(2). The Debtors must seek court approval to assume the contracts. *Walat Farms*, 69 B.R. at 532–534. If the contracts are rejected, offset would be appropriate, for section 362(g)(1) would make the obligation generated a pre-petition claim. If the Debtor assumes the contract, then the commodity certificates, or other benefits, will be owed to the Debtor in possession and the mutuality required under section 553 will not exist.

The current motion to modify stay to allow setoff must be denied pending assumption or rejection of the contracts. The Debtor's cross-request to compel the issuance of the commodity certificates is premature and will also be denied. An order consistent with this opinion will be entered.[2]

---

2. Of course, this opinion answers the legal posi-

tion of the parties once assumption or rejection

occurs and relitigation of these issues would be very inappropriate.