**In re Danny Neil FRYAR and Linda Fay Fryar, Debtors.**

**Bankruptcy No. 87–70139.**

United States Bankruptcy Court,
W.D. Texas,
Midland–Odessa Division.

March 27, 1989.

T.L. Rees, Thompson and Rees, Colorado City, Tex., for debtors, Danny Neil Fryar and Linda Fay Fryar.

Nancy Stein Nowak, U.S. Atty., San Antonio, Tex., for U.S.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The question in this case is whether a debtor in possession should be permitted to assume certain contracts with an agency of the United States government. Finding that the contracts are executory and assumable by the Debtor, the Court renders this Opinion as its findings of fact and conclusions of law under Bankruptcy Rule 7052. The factual findings herein were stipulated and are the same as those previously determined by Chief Judge R. Glen Ayers, Jr. in his Memorandum Opinion, *In re Fryar*, 93 B.R. 101 (Bankr.W.D.Tex. 1988).

The Debtors are farmers who filed a petition under Chapter 12 of the Bankruptcy Code on April 3, 1987.[1] The case was converted to Chapter 11 on August 7, 1987. Danny Fryar (the "Debtor") entered into five prepetition contracts to participate in

---

1. 11 U.S.C. § 1201 *et. seq.* (1982 & Supp. IV 1986). Title 11 is referred to herein generally as the Bankruptcy Code.

the 1987 price support and production adjustment programs with the Commodity Credit Corporation ("CCC"). Each contract consists of a single page, which identifies the producer, the crop, and the acreage, plus an Appendix to Form CCC–477 ("Appendix"), which contains the terms and conditions of the contract. The Agricultural Stabilization and Conservation Service ("ASCS") administers the price support program. The Debtor is now eligible to receive final 1987 benefit payments in the form of commodity certificates with a face value of approximately $21,000.00. The parties have stipulated that these certificates can be sold on the market at greater than face value.

Arising from a separate transaction, the Debtor obtained a prepetition loan from the Farmers Home Administration ("FmHA") which is secured by liens on equipment and crops. The FmHA filed a proof of claim asserting that the claim was not subject to any setoff. The FmHA later sought to set off the face value of the certificates payable by ASCS–CCC to the Debtor against the indebtedness owed by the Debtor to FmHA.

On May 10, 1988, the Court held a hearing on the United States of America's Motion to Modify Stay Authorizing Setoff. Judge Ayers denied that Motion, pending assumption or rejection of the contracts. *In re Fryar, supra.* The Debtor now seeks the Court's approval for assumption of these contracts. The United States responds that the contracts cannot be assumed since they have been completed, are no longer executory, and are nonassumable personal service contracts.

The evidence shows that the contracts between ASCS–CCC and the Debtor were unperformed on April 3, 1987, when the Debtor filed his petition, because he had a continuing obligation to implement certain farming practices such as protecting the designated land by planting cover and preventing erosion. The parties stipulated that ninety percent of the Debtor's performance under the contracts was performed postpetition. ASCS owed benefits to the Debtor upon completion of the Debt-

or's contractual obligations. The Debtor completed all of his obligations under the contracts after the filing of this case.

Section 365 of the Bankruptcy Code permits a debtor in possession to assume or reject executory contracts, subject to court approval. While there is no definition of the term "executory contract" given in the Code, the most frequently followed definition is the one stated by Professor Countryman:

> A contract under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn.L.Rev. 439, 460 (1973). Based on the legislative history of Section 365, the United States Court of Appeals for the Fifth Circuit has formulated a somewhat broader definition: an executory contract is one "on which performance remains due to some extent on both sides." *Tonry v. Hebert (In re Tonry),* 724 F.2d 467, 468 (5th Cir.1984); *see* S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5844; *T.G. Motors, Inc. of Houston v. C.M. Turtur Investments, Inc. (In re C.M. Turtur Investments, Inc.),* 93 B.R. 526, 532 (Bankr.S.D.Tex.1988).

█ The first, and perhaps pivotal, issue for determining whether the contracts in this case can be assumed is *when* the contract must be executory under the *Tonry* definition. The United States concedes that the contracts were executory at the time the petition was filed, but claims that the contracts in this case cannot be assumed because they were not executory at the time the motion to assume was filed. The United States further argues that when the motion to assume was filed, there was no longer anything to assume since the Debtor's performance, albeit postpetition, had been completed. The analogy is made to a real property lease which has expired prior to the filing of bankruptcy, and which is clearly not resurrected by the filing of a bankruptcy petition. *See Kopelman v.*

*Halvajian (In re Triangle Laboratories, Inc.)*, 663 F.2d 463, 467–68 (3d Cir.1981); *In re Dunes Casino Hotel*, 63 B.R. 939 (D.N.J.1986).

Although the time for application of the Countryman or *Tonry* test is unclear from Section 365 of the Bankruptcy Code as well as the legislative history, the better reasoned case law holds that the correct time to determine whether a contract is executory is the date upon which the petition for relief was filed in the bankruptcy court. It has recently been held that an executory contract which can be rejected is one under which "performance remains due on both sides at the time of the bankruptcy petition." *Carlson v. Farmers Home Administration (In re Newcomb)*, 744 F.2d 621, 624 (8th Cir.1984); *see also In re Coast Trading Co.*, 744 F.2d 686, 693 (9th Cir. 1984) ("contracts should be no less executory because the seller chooses not to suspend performance but tenders performance subsequent to the filing of the bankruptcy petition"); *In re Norquist*, 43 B.R. 224, 230 (Bankr.E.D.Wash.1984) ("the correct time to apply the Countryman test ... is the date upon which the petition for relief was filed").[2] This result is not affected by the fact that the filing of bankruptcy cannot resurrect contracts or leases which terminated prior to the filing of the petition in bankruptcy. *In re Triangle Laboratories, Inc., supra; In re Dunes Casino Hotel, supra.* In addition, under Section 365(d)(2) of the Bankruptcy Code, nondebtor parties to an executory contract have the option of requesting at an early stage in the case that the court shorten the time for assumption or rejection. No such motion was filed in this case. The Debtor therefore has the right to assume or reject "at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2) (1982 & Supp. IV 1986).

■ The second issue for determining whether a contract can be assumed is whether the contract is truly executory at the time the bankruptcy case is commenced. In that regard, the facts in this case are similar to those in *Walat Farms, Inc. v. United States (In re Walat Farms, Inc.)*, 69 B.R. 529 (Bankr.E.D.Mich.1987). In *Walat Farms*, the debtor-farmer obtained loans from the Commodity Credit Corporation secured by liens on the debtor's 1984 corn and soybean crops. Thereafter, the debtor signed a contract with the CCC to participate in the 1985 Price Support and Production Adjustment Program. On July 11, 1985, the debtor filed its Chapter 11 petition, and on April 24, 1986, the debtor sought to compel the CCC to turn over the 1985 contract payment. The CCC acknowledged it owed the debtor-farmer $33,641.54 on the 1985 contract, but claimed a right, pursuant to Section 553 of the Bankruptcy Code, to setoff that debt against the money owed to it by the debtor for the 1984 crop loans.

*Walat Farms* concluded that the agreement between debtor and the CCC was executory because:

1. The debtor still had a duty not to plant crops on the set-aside acres;

2. The debtor had to maintain cover on those acres;

---

**2.** *See also Jenson v. Continental Financial Corp.*, 591 F.2d 477, 481 (8th Cir.1979) ("where the contractual obligations of the bankrupt and the other contracting party remain at least partially and materially unperformed at bankruptcy, the contract is executory"); *In re R.M. Cordova International, Inc.*, 77 B.R. 441, 446 (Bankr.D.N.J. 1987) ("if performance no longer remains due on either side at the time the petition is filed, neither the Court nor the Trustee is confronted with an executory contract"); *In re Farrar McWill, Inc.*, 26 B.R. 313, 314 (Bankr.W.D.Ky. 1982) ("a contract where the obligations of both parties remain at least partially and materially unperformed at the time of bankruptcy"); *Burg-er King Corp. v. Rovine Corp. (In re Rovine Corp.)*, 6 B.R. 661, 664 (Bankr.W.D.Tenn.1980) ("the obligations of both parties remain at least partially and materially unperformed at the time of bankruptcy"). An all encompassing definition of "executory contract" may not be possible to state, but in the words of Justice Stewart:

I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it.... *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (concurring opinion).

3. The debtor had to satisfactorily fulfill all contractual obligations in order to be eligible for payment; and

4. The CCC owed the entirety of its obligation to pay the deficiency amount.

By comparison, the obligations owed by the Debtor and ASCS–CCC in this case are:

1. The Debtor still had a duty not to plant crops on the set-aside acres;

2. The Debtor had to maintain cover on those acres;

3. The Debtor had to harvest the crop;

4. The Debtor had to take the receipts to the ASCS office so it could establish the yield on the crop;

5. The Debtor has not been paid;

6. The CCC must determine the Debtor's eligibility; and

7. Based upon the Debtor's satisfaction of all requirements pursuant to the contracts, ASCS–CCC must pay the debtor.

*Walat Farms* concluded that the agreement between the CCC and the debtor was an executory contract. It is clear that the contracts in this case between the Debtor and ASCS–CCC are also executory.

■ The United States also argues that 7 C.F.R. § 713.151 (1988), as "applicable law," excuses it from accepting performance under Section 365(c)(1) of the Bankruptcy Code from a third party. Section 365(c)(1)(A) provides that the trustee (or debtor in possession)[3] may not assume an executory contract, without consent of the nondebtor party, if:

[A]pplicable law excuses a party, other than the debtor, to such contract ... from accepting performance from or rendering performance to an entity other than the debtor or the *debtor in possession*, whether or not such contract ... prohibits or restricts assignment of rights or delegation of duties....

[Emphasis added.] Since performance of the contract between the Debtor and the CCC has been rendered by the Debtor, prior to filing, and by the debtor in possession, on a postpetition basis, the CCC is not excused from performance on a personal service contract theory under Section 365(c)(1). The rationale of *Skeen v. Harms (In re Harms)*, 10 B.R. 817 (Bankr.D.Colo. 1981), which held that the *debtor in possession* could not assume a personal service contract of the prepetition *debtor*, has been superseded by the 1984 amendments to Section 365(c)(1).[4] Prior to the 1984 amendments, the trustee could not assume a personal service contract if applicable law excused the objecting nondebtor party from accepting performance from the trustee. It must be noted that the term "trustee" also includes debtor in possession for most purposes under Section 1107(a). Section 365(c)(1)(A) now states, however, that the trustee may not assume a personal service contract if applicable law excuses the objecting nondebtor party from accepting performance from "an entity other than the debtor or the debtor in possession." This leaves open the possibility that the trustee or debtor in possession may assume an executory personal service contract with an objecting nondebtor where performance continues by the debtor or debtor in possession.

In addition, 7 C.F.R. § 713.151(b) (1988) does not expressly require the permission of the CCC as a prerequisite to accepting performance from a successor producer. It addresses the situation in which "the predecessor and successor *fail to agree* on a revised contract and the predecessor has become unable to carry out the producer's responsibilities." [Emphasis added.] In that instance, "CCC may terminate the contract with respect to the predecessor and enter into a new contract with the successor." 7 C.F.R. § 713.151(b) (1988). This provision does not grant the CCC the right to repudiate its contract with the Debtor and does not excuse the United States from

---

3. *See* 11 U.S.C. § 1107(a) (1982 & Supp. IV 1986), which empowers the debtor in possession to perform the functions and duties of a trustee, with certain exceptions not here relevant.

4. *See* Leasehold Management Bankruptcy Amendments Act of 1983, Pub.L. No. 98–353, 98 Stat. 361 (1984).

accepting performance from the debtor in possession.

Since these contracts were still executory at the time this case was filed, were largely performed on a postpetition basis, and are assumable by a debtor in possession, the Motion of Debtor to Assume Executory Contracts is granted. An order authorizing assumption of the contracts by the Debtor will be rendered contemporaneously herewith.